PEOPLE v PRESTON WILLIAMS

Docket No. 91741. Submitted March 18, 1987, at Lansing. Decided
   April 10, 1987.

   Preston R. Williams was convicted following a bench trial in the
   Oakland Circuit Court of possession with intent to deliver
   between 50 and 225 grams of a mixture containing cocaine and
   of possession with intent to deliver less than 50 grams of a
   mixture containing heroin. The trial court, David F. Breck, J.,
   sentenced defendant to life on probation on the cocaine convic-
   tion and to from 3½ to 20 years imprisonment on the heroin
   conviction. Defendant appeals alleging that the evidence of the
   cocaine and heroin was improperly admitted at trial because it
   was obtained in violation of defendant's right against unreason-
   able searches and seizures.

   The Court of Appeals held:

   1. The police officers had probable cause to believe that a
   crime had just been committed and that proof of that crime
   could be found in defendant's home. Here, the police officers
   were not in a position to secure the premises and wait for the
   issuance of a warrant without putting themselves at serious
   risk or running the risk that an ongoing crime might continue.
   There were exigent circumstances justifying the intrusion of
   the officers into defendant's home.

   2. In addition to the fact that the police officers were investi-
   gating an audible burglar alarm at the defendant's home, the
   facts of an open window and visible pry marks, together with
   footprints in the snow, furnish an independent basis to con-
   clude that the officers were entitled to enter the home.

   Affirmed.

1. Searches and Seizures — Searches Without Warrant.

   A search without a warrant is unreasonable per se unless there

References

Am Jur 2d, Searches and Seizures §§ 37-59, 85, 88.

Validity of seizure under Fourth Amendment "plain view" doctrine
   — Supreme Court cases. 75 L Ed 2d 1018.

Sufficiency of evidence that possessor of heroin had intent to
   distribute it, so as to violate 21 USCS § 841(a)(1). 78 ALR Fed 413.

See also the annotations in the Index to Annotations under Search
   and Seizure.

exists both probable cause and circumstances establishing one of the delineated exceptions to the warrant requirement.

2. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANT — PROBABLE CAUSE.

Probable cause has been defined as a state of mind which stems from some fact, circumstance, or information which would create an honest belief in the mind of a reasonably prudent person; probable cause to search exists where facts, circumstances and information known to the police officers at the time of the search would warrant a person of reasonable prudence to believe that a crime has been or is being committed and that the evidence sought will be found in the stated place.

3. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANT — EXIGENT CIRCUMSTANCES.

The exigent circumstances exception to the rule that a search and seizure without a warrant is per se unreasonable provides that exigent circumstances are present where immediate action is necessary to (1) protect the police officers or other persons, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the suspect; in addition, a police officer may enter a building without a warrant within a reasonable time following a breaking and entering in order to (1) secure the premises against further intrusion, (2) determine if the burglars have done something requiring immediate action to prevent further property damage or personal injury, or (3) aid a victim in the building who may be injured or restrained.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Michael H. Golob,* for defendant.

Before: MACKENZIE, P.J., and BEASLEY and E. A. QUINNELL,* JJ.

PER CURIAM. Following a bench trial, defendant, Preston Ronald Williams, was convicted of posses-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sion with intent to deliver between 50 and 225 grams of a mixture containing cocaine, MCL 333.7401(1); MSA 14.15(7401)(1), MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii), and MCL 333.7214(a)(iv); MSA 14.15(7214)(a)(iv), and of possession with intent to deliver less than 50 grams of a mixture containing heroin, MCL 333.7401(1); MSA 14.15(7401)(1), MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and MCL 333.7212(1)(b); MSA 14.15(7212)(1)(b). On March 27, 1986, defendant was sentenced to life probation on the cocaine conviction and to not less than 3½ nor more than 20 years in prison on the heroin conviction. Credit was given for 11 days already served. Defendant appeals as of right.

The sole issue on appeal is whether the evidence of the cocaine and heroin was erroneously admitted because it was allegedly obtained in violation of defendant's right against unreasonable searches and seizures, as provided by US Const, Am IV and Const 1963, art 1, § 11. This was also defendant's sole defense at the trial level. Indeed, as defendant points out, the trial resembled a suppression hearing.

At approximately 6:00 P.M. on December 19, 1984, Oak Park Police Officers Allen Rubin and Kirk Skarjune received a dispatch over their car radio to investigate reports of burglar alarms going off at two homes. The homes described in the dispatch were 14011 Greenbriar and 14131 Greenbriar. Upon arriving at 14011 Greenbriar, according to Officer Rubin's testimony, there was no audible alarm. Officer Skarjune testified that there was an audible alarm. Both officers testified that the windows and doors to the home all appeared to be secure. They then proceeded to 14131 Greenbriar.

On the way to 14131 Greenbriar, the officers

heard an alarm at 14111 Greenbriar, defendant's home, which they stopped to investigate. The house was dark and all the windows and doors were secure except for a crank window at the back of the home which was open and appeared to have been pried. There were footprints in the snow leading up to or away from the window. Officer Skarjune entered through the window, opened the back door and let Officer Rubin in. Both officers had their guns drawn.

According to Officer Rubin, they entered the house because "we had an alarm sounding and we had an open window and we had an alarm that had been tripped and we believed that the perpetrator was still in that house and we went in to see if in fact there was somebody in that house." Officer Rubin further stated, "I know when I find an open window and an alarm going off, that I enter a building." Officer Skarjune also testified that it appeared that the house had been broken into and that he went in to see whether there was somebody inside and, if not, whether there were "things tampered with inside." When asked whether he really believed there might have been a burglar in the house, Skarjune replied, "There's always that possibility."

The officers did not find a burglar. They did find that the basement area appeared to have been ransacked. They also found various narcotics and paraphernalia in the basement, which led to the arrest of defendant.

The parties agree that if the intrusion of the officers into defendant's home was itself constitutionally valid, then the evidence they found therein was properly seized. They also agree that a search without a warrant is unreasonable per se unless there exists both probable cause and circumstances establishing one of the delineated ex-

ceptions to the warrant requirement.[1] The only exception the parties believe to be applicable is "exigent circumstances."

Probable cause has been defined as a state of mind which stems from some fact, circumstance or information which would create an honest belief in the mind of a reasonably prudent person.[2] More specifically, probable cause to *search* exists where facts and circumstances would warrant a person of reasonable prudence to believe that a crime has been or is being committed and that the evidence sought will be found in the stated place. In assessing whether probable cause exists, the facts, circumstances and information known to the officers at the time of the search must be examined.[3]

Defendant points out that, although the trial court specifically found exigent circumstances, it did not explicitly say that it found probable cause. The court did, however, make plentiful findings of fact, supported by the record, about what occurred on the night in question sufficient for us to determine whether there was probable cause. Here are the trial judge's factual findings:

> It's true that there were some minor discrepancies in the two officers' testimony, the first two. However, the Court is satisfied that there [were] exigent circumstances and the Court is going to find that on December 19, 1984, the officers were dispatched to investigate an alarm at 14011 Greenbriar in Oak Park and while there, they heard another alarm down the street and they were directed to go to 14131 Greenbriar to check out what had been reported as an alarm in operation there.

---

[1] *People v Anthony,* 120 Mich App 207, 210-211; 327 NW2d 441 (1982).

[2] *Id.,* p 211.

[3] *People v Whittie,* 121 Mich App 805, 811; 329 NW2d 497 (1982).

Before they got there, and while in close proximity to 14111 Greenbriar, they heard an alarm coming from that house and they checked it out and found the doors and windows on the—the door on the front and the windows on the front and on the sides were secure but when they went into the backyard, they observed this window open at least three quarters of the way open, that the venetian blinds were askew and that there were pry marks visible and that footprints were observed in the snow between the fence where there was a hole and this window. That it was just getting dark and that it was raining and that they also observed the tape wire had been separated; this wire being used in the alarm system.

Officer Skarjune went through the window and let Officer Rubin in the door. I find that the officers believed that the perpetrator was still in the house and that they were so concerned, they went with their guns drawn and found no one inside.

I also find that the officer testified, Officer Rubin, and the Court so finds that the pry marks appeared to be fresh and that the alarm was in fact in operation at the time these officers were at that house and going in the window. And that the officers [sic] purpose in going in was to determine whether anybody was inside who should not be there or whether items had been taken.

These findings of fact justify a holding that the officers had probable cause to believe that a crime had just been committed and that evidence of that crime could be found within. There was an alarm going off, a window which appeared to have been pried open and footprints leading up to the window. A reasonably prudent person, in those circumstances, would believe that a burglary had been committed on the premises. It follows that the premises would contain evidence of that burglary. Defendant points to Officer Skarjune's ad-

mission that the intruder possibly would have been long gone in light of the fact that the alarm was very loud and had been ringing for a while. What was *possible* is not at issue here, however. We are concerned with what a person in the officers' position would have believed was *probable.* Further, such an admission does not affect the reasonableness of the officer's belief that a crime had been committed.

Exigent circumstances are present where immediate action is necessary to: (1) protect the police officers or other persons; (2) prevent the loss or destruction of evidence; or (3) prevent the escape of the suspect.[4] In *People v Anthony,*[5] a witness had seen the defendant at the scene of an armed robbery and led the police to the defendant's home. The witness did not say (or, apparently, know) whether defendant was at home. This Court held that "the term exigent does not mean expedient." Because the officers had the house under control, they were in no danger and there was no testimony that they believed that defendant could escape or would destroy valuable evidence, exigent circumstances were found to be lacking. The *Anthony* Court specifically distinguished its facts from a situation where a reliable third party actually saw the defendant enter the house, instead of simply knowing that he lived there.

In *People v Van Auker,*[6] there was testimony that at least five officers were present at the time of the defendant's arrest and that there was only one entrance to the apartment in which he was hiding. Under these circumstances, the *Van Auker* Court stated that the officers could have kept

---

[4] *Anthony, supra,* p 211, citing *People v Dugan,* 102 Mich App 497, 503; 302 NW2d 209 (1980).

[5] *Supra,* p 212.

[6] 111 Mich App 478, 482-483; 314 NW2d 657 (1981).

watch over the building and prevented any attempted escape while waiting for an arrest warrant to be issued. Further, because the police did not *know* that the defendant had evidence, immediate entry was not necessary to prevent destruction of that evidence. The Court went on to say: "To reach a finding of exigent circumstances in such a situation would allow police officers to make warrantless entries to effect arrests whenever they suspected that a suspect *might* have evidence in his possession which *might* be destroyed. We decline to do so."

On the other hand, in *United States v Estese*,[7] police responded to a radio call reporting a breaking and entering at the defendant's apartment. They observed that the door had been pried open. The defendant was not at home. After reinforcements arrived, the officers entered the apartment and searched for the burglar. They did not find anyone, but did find evidence later used to convict the defendant. The district court held that the police had reason to believe that a burglary was in progress and also believed that the burglar might still be inside. It concluded that "there were exigent circumstances, to use the wording of the cases." The Court of Appeals for the Sixth Circuit held, "Clearly in this case the basic invasion of appellant's privacy had been accomplished by the burglar." The court held that the police were justified, given the probable cause, to search the apartment for the burglar. The major difference between *Estese* and the within case is that in *Estese* there was a radio report of a breaking and entering, whereas here there was merely a burglar alarm ringing. The difference does not seem material to us in determining whether there were exigent circumstances.

[7] 479 F2d 1273, 1274 (CA 6, 1973).

We also believe that the facts here are materially different from those in *Van Auker* and *Anthony*. Unlike the apartment in *Van Auker,* the house here apparently had several windows and at least two doors, and there were only two police officers instead of five. Thus, the officers were not in a position to secure the premises and wait for the issuance of a warrant without putting themselves at serious risk or running the risk that an ongoing crime might continue. Unlike in *Anthony,* it does not appear that the officers had the house under control and were in no danger.

In addition to these considerations, the recent case of *People v United States Currency*[8] sheds a new light on the subject. There, two police officers observed a breaking and entering. They then arrested the suspects and entered the premises "to determine if there was any damage." There was not, but the officers did see gambling equipment and paraphernalia that they later seized. This Court held the entry and search to be valid. In addition to recounting the three reasons for exigent circumstances cited above, the *United States Currency* Court reviewed several other cases and made the following holding:

> After considering these cases, we believe that the appropriate rule to apply to the instant case is that, in addition to the factors stated in [*People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980)], a police officer may enter a building within a reasonable time following a breaking and entering in order to (1) secure the premises against further intrusion, (2) determine if the burglars set a fire, planted an explosive, etc., such that immediate action to prevent further property damage or per-

[8] 148 Mich App 326, 330-331; 383 NW2d 633 (1986).

sonal injury is necessary, or (3) aid a victim in the building who may be injured or restrained.[9]

This seems a sensible extension of the exigent-circumstances doctrine. We are inclined to adopt the reasoning of the *United States Currency* Court and apply it to the facts before us. There was certainly a need to secure the premises against further intrusion and, quite possibly, to determine whether the burglars had done anything requiring immediate action to prevent further property damage or personal injury. For the reasons cited above, however, we believe that there were exigent circumstances in this case even if we were not to adopt the *United States Currency* reasoning.

Last, we would indicate that we are aware of the great increase in the number and types of burglar alarms in use. In the within case, we do not need to decide whether the mere installation of a burglar alarm system gives implied permission to the police to enter a home when the burglar alarm siren is on or where a burglar alarm company has telephoned a police station to advise that a burglar alarm has gone off. Here, the additional facts of an open window and visible pry marks, together with footprints in the snow, furnish an independent basis for concluding that the officers were entitled to enter the home.

Affirmed.

---

[9] *Id.,* p 331.