PEOPLE v DAVIS

Docket No. 125120. Submitted January 10, 1991, at Detroit. Decided
     May 21, 1991, at 9:15 A.M.

    Harriet L. Davis was charged in the Detroit Recorder's Court
with possession with intent to deliver more than 50, but less
than 225, grams of cocaine, possession with intent to deliver
less than fifty grams of heroin, possession of marijuana, and
possession of a firearm during the commission of a felony. The
court, Terrance K. Boyle, J., suppressed the evidence and
dismissed the charges, finding that the defendant did not
consent to the entry by police officers without a warrant into
the motel room where the evidence was discovered. The prose-
cutor appealed, relying on the exigent circumstances and plain
view exceptions to the search warrant requirement.

    The Court of Appeals *held:*

    The trial court's decision to suppress the evidence was clearly
erroneous. Although there was no consent as a matter of law,
because the defendant opened the motel room door in compli-
ance with a police demand, the officers had the right, in
responding to an emergency report of possible gunfire within a
motel room, to be on the motel premises and to knock and
demand that the defendant open the door as part of their
routine community caretaking function. The exigent circum-
stances exception to the search warrant requirement applies
under the facts of this case, and the seizure of a gun protruding
from beneath a mattress visible from the door fell within the
plain view exception to the warrant requirement.

    Reversed and remanded.

1. SEARCHES AND SEIZURES — WITHOUT WARRANTS — CONSENT —
     POLICE DEMANDS.

    There is no consent as a matter of law to a search and seizure by
the police without a warrant where an occupant opens a door
in compliance with a police demand.

REFERENCES

Am Jur 2d, Searches and Seizures §§ 41-44, 47, 56, 88, 89, 91, 99.
Validity of seizure under Fourth Amendment "plain view" doctrine
—Supreme Court cases. 75 L Ed 2d 1018.

2. SEARCHES AND SEIZURES — WITHOUT WARRANTS — EXIGENT CIR-
   CUMSTANCES — COMMUNITY CARETAKING FUNCTIONS.
   The exigent circumstances exception to the search warrant re-
   quirement applies where the police have probable cause to
   believe that an immediate search will produce specific evidence
   of a crime and that an immediate search without a warrant is
   necessary to protect the officers or others, to prevent the loss or
   destruction of evidence, or to prevent the escape of the accused;
   the police have the right under this exception to enter prem-
   ises, provided there is probable cause, as part of their routine
   community caretaking function, which includes responding to
   calls reporting gunfire within residential areas.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, and *Timothy A. Baughman,* Chief
of Research, Training, and Appeals, for the people.

*Bellanca, Beattie & DeLisle, P.C.* (by *Frank D.
Eaman*), for the defendant.

Before: JANSEN, P.J., and WAHLS and HOOD, JJ.

PER CURIAM. The prosecutor appeals as of right
from a December 12, 1989, Detroit Recorder's
Court order granting defendant's motion to sup-
press the evidence seized in a search of a motel
room that defendant was occupying and dismissing
the charges against defendant.[1]

During the evidentiary hearing regarding defen-
dant's motion to suppress, Detroit police officers
Lynn Brown and Royce Hill testified that on Au-
gust 4, 1989, they were assigned patrol car 7-5. On
that evening, at approximately 6:00 P.M., in re-
sponse to a 911 emergency call, the dispatcher
radioed the following message, "Car 7-7, 3250 East

---

[1] Possession with intent to deliver more than 50, but less than 225,
grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii),
possession with intent to deliver less than fifty grams of heroin, MCL
333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), possession of marijuana,
MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d), and possession of a firearm
during the commission of a felony, MCL 750.227b; MSA 28.424(2).

Jefferson, Belmar Motel, room 33 or 34, desk clerk says shots fired." Although the message was not directed to their patrol car, Brown and Hill responded because they were near the motel.

Upon their arrival, the officers did not notice any unusual activity. Brown and Hill approached room 33 with their guns drawn, and Brown knocked on the door while stating, "Police, open up." In response, defendant opened the curtains, looked out, and saw Brown and Hill in uniform with their weapons drawn. Brown and Hill identified themselves as police officers, but defendant left the window and closed the curtain. As Brown continued to bang his fist on the motel room door, the motel manager arrived and offered to get the keys to the motel room. Brown testified that, on the basis of the information received from the dispatcher, he was concerned and fearful for his own safety as well as for the safety of others. After approximately three to five minutes, and before the motel manager returned with the key, defendant opened the door.

The officers stood in the doorway, with their weapons still drawn, and explained to defendant that they were responding to the radio message regarding gunfire. From his vantage point, Brown was able to see a wooden object which looked like the butt of a gun protruding from underneath a mattress. Brown also saw narcotics paraphernalia on a dresser. Brown immediately walked over to the bed to get the protruding item and discovered that it was, indeed, a gun. Once inside the room, Brown noticed that, in addition to the narcotics paraphernalia he saw from the doorway, he was able to specifically identify pharmaceutical capsules, razor blades, and containers containing white substances on the dresser.

After Brown had gotten the gun, Hill proceeded

into the bathroom area, where he discovered narcotics paraphernalia on the toilet tank. In addition to Brown's discovery, Hill also found a clear plastic bag of suspected marijuana, razor blades, and cash totaling $3,370 on the dresser. Hill testified that he went into the other areas of the motel room because he was concerned that someone may have been shot and wounded.

There was conflicting evidence regarding whether patrol car 7-7 ever responded to the dispatcher's message, but the narcotics team and another marked patrol car arrived approximately twenty to thirty minutes after Brown and Hill.

Following the testimony and oral arguments, the trial court stated as follows:

> Here, there was a forcible entry of a motel room, or at least an entry without consent. The entry was accomplished by police authority and demand. The entry would not have been allowed without the show of force, and authority, and the demand for entry. The conduct in question produced what we could call a plain view seizure of the items in question, although you always get involved in circular reasoning when you start to call something plain view seizure. But, to make it clear, in terms of my holding, whether or not the seizure is justified depends on whether the police had a right to be where they were.
>
> I believe that under controlling precedent they did not. The radio run clearly gave the police a right to investigate. But, the level of information given to the police, and the way in which it was given, cannot justify a nonconsensual [sic] entry into private property.
>
> I grant the motion to suppress. And I will dismiss the case. In so doing, I hold that the police acted reasonably in all that they did, and were I free to create law, I would uphold the seizure. . . . But, as I read the law, I believe that I am required to hold that under the facts of this case—and I am

not indicating that it's clear—well, I don't have to say anything more. I've already said that I think what the police did was reasonable, but I don't think that there is a general exception for reasonable police activity. I think they needed a warrant, or they needed to have their activity fit within one of the recognized exceptions. It doesn't, under the facts of the case. And, as a result, I'm suppressing the evidence.

The Fourth Amendment of the United States Constitution and the parallel provision of the Michigan Constitution guarantee the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Fourth Amendment is not a guarantee against all searches and seizures, but only against those which are unreasonable. *United States v Sharpe,* 470 US 675; 105 S Ct 1568; 84 L Ed 2d 605 (1985); *People v Shabaz,* 424 Mich 42, 52; 378 NW2d 451 (1985), cert dis 478 US 1017 (1986); *People v Orlando,* 305 Mich 686, 690; 9 NW2d 893 (1943). Therefore, the touchstone of a reviewing court's Fourth Amendment analysis is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Michigan v Long,* 463 US 1032, 1051; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), quoting *Terry v Ohio,* 392 US 1, 19; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The Michigan Constitution does not impose a higher standard of reasonableness for searches and seizures than that imposed by the federal constitution. *People v Nash,* 418 Mich 196, 214-215; 341 NW2d 439 (1983); *People v Ragland,* 149 Mich App 277, 281; 385 NW2d 772 (1986).

Generally, a search conducted without a warrant is unreasonable unless there exists both prob-

able cause and a circumstance establishing an exception to the warrant requirement. *People v Malone,* 180 Mich App 347, 355; 447 NW2d 157 (1989); *People v Anthony,* 120 Mich App 207, 210; 327 NW2d 441 (1982), lv den 417 Mich 897 (1983), cert den 462 US 1111 (1983). Among the recognized exceptions to the warrant requirement are consent, exigent circumstances, and plain view. *People v Castle,* 126 Mich App 203, 208; 337 NW2d 48 (1983).

When a defendant moves to suppress evidence which was allegedly illegally obtained, the prosecutor has the burden to show that the search and seizure were justified by a recognized exception to the warrant requirement. *People v Wade,* 157 Mich App 481, 485; 403 NW2d 578 (1987). This Court will not reverse a trial court's decision following a suppression hearing unless it is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983); *People v Russo,* 185 Mich App 422, 434; 463 NW2d 138 (1990). Therefore, the trial court's decision will be affirmed unless, upon a review of the record, this Court is left with a definite and firm conviction that a mistake was made. *People v Toohey,* 183 Mich App 348, 352; 454 NW2d 209 (1990), lv gtd 436 Mich 880 (1990).

In the instant case, the prosecutor relied on the exigent circumstances and plain view exceptions to the warrant requirement to justify the search and seizure which occurred in defendant's motel room. However, the trial court based its decision on the consent exception, and found defendant did not consent to the entry of the police officers. Nevertheless, the trial court was correct in viewing the question presented as asking whether the police were justified in commanding defendant to open the motel room door. In other words, whether the police officers were in a position where they had a

right to be when they viewed the incriminating evidence.

The consent exception permits a search and seizure when the consent is unequivocal and specific. *Malone, supra.* The validity of a consent depends on the totality of the circumstances, *People v Brown,* 127 Mich App 436, 441; 339 NW2d 38 (1983), and the prosecutor has the burden of proving that the person consenting was authorized to do so and did so freely, *People v Wagner,* 104 Mich App 169, 176; 304 NW2d 517 (1981). A consent can be valid even if the person is not apprised of his right to refuse consent. *Malone, supra,* p 356.

Clearly, where an occupant opens a door in compliance with a police demand there can be no consent as a matter of law. *United States v Winsor,* 846 F2d 1569, 1573, n 3 (CA 9, 1988). Accord *Bumper v North Carolina,* 391 US 543, 548-550; 88 S Ct 1788; 20 L Ed 2d 797 (1968). On the facts presented in the case before us, the consent exception to the warrant requirement is not applicable. Therefore, if the seizure is to be upheld as constitutional, it must fall within one of the other recognized exceptions to the warrant requirement.

The exigent circumstances exception is applicable where the police have probable cause to believe that an immediate search will produce specific evidence of a crime and that an immediate search without a warrant is necessary in order to protect the officers or others, to prevent the loss or destruction of evidence, or to prevent the escape of the accused. *People v United States Currency,* 148 Mich App 326, 330; 383 NW2d 633 (1986).

One well-recognized subcategory of the exigent circumstances exception centers on the police officer's role as a community caretaker. Under this exception, police have a right to enter premises, provided there is probable cause, as part of their

routine community caretaking function. That function naturally includes responding to calls reporting gunfire within residential areas. See *United States v Nord,* 586 F2d 1288, 1290 (CA 8, 1978). See also *Arizona v Hicks,* 480 US 321, 334; 107 S Ct 1149; 94 L Ed 2d 347 (1987) (O'Connor, J, dissenting). Further, the Fourth Amendment does not bar police officers from making entries and searches without a warrant where they reasonably believe that a person within is in need of immediate aid. *Mincey v Arizona,* 437 US 385, 392; 98 S Ct 2408; 57 L Ed 2d 290 (1978). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Id.,* quoting *Wayne v United States,* 115 US App DC 234, 241; 318 F2d 205 (1963).

Probable cause to search exists when facts and circumstances warrant a reasonably prudent person to believe that a crime has been committed and that the evidence sought to be found is in a stated place. Whether probable cause exists depends on the information known to the officers at the time of the search. *People v Preston Williams,* 160 Mich App 656, 660; 408 NW2d 415 (1987).

In this case, the officers were responding to a report of gunfire within one of two motel rooms. The officers did not know if they would discover a shooting victim, a hostage situation, or an armed gunman. Notwithstanding, it was the officers' duty to investigate the report. A reasonably prudent person, in those circumstances, would believe that if a shooting took place, one of the two motel rooms would contain evidence of that shooting. Although it was *possible* that the report itself was false, we are concerned with what a person in the officers' position would have believed was *probable. Williams,* pp 661-662. Thus, it was not unreason-

able for the officers to approach the motel room cautiously, with their weapons drawn, and demand that the motel room occupant open the door. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v Ohio,* 392 US 1, 23; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

The plain view exception allows seizure of objects falling within the plain view of an officer who is rightfully in a position where the evidence is plainly visible. *Harris v United States,* 390 US 234, 236; 88 S Ct 992; 19 L Ed 2d 1067 (1968); *People v Tisi,* 384 Mich 214, 218; 180 NW2d 801 (1970). The requirements of the plain view exception are: (1) there must be prior justification for intrusion into the otherwise protected area, (2) the evidence must be obviously incriminatory or contraband, and (3) the discovery of the evidence must be totally inadvertent. *Coolidge v New Hampshire,* 403 US 443, 466; 91 S Ct 2022; 29 L Ed 2d 564 (1971); *People v Myshock,* 116 Mich App 72, 75-76; 321 NW2d 849 (1982). The police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Michigan v Tyler,* 436 US 499, 509-510; 98 S Ct 1942; 56 L Ed 2d 486 (1978); *Mincey, supra; Coolidge, supra,* pp 465-466.

On the basis of the record in this case, we conclude that the seizure fell within the plain view exception to the warrant requirement. First, the police officers had the right to be on the motel premises and to knock and demand that defendant open the motel room door as part of their routine community caretaking function, which includes responding to 911 emergency calls. Once defendant opened the door, and before the officers entered the motel room, the officers saw in plain view what appeared to be the butt of a gun protruding

from under the mattress. To satisfy the second requirement of the plain view doctrine, i.e., whether the apparent gun butt protruding from under the mattress was obviously incriminatory or contraband, the officers needed only have probable cause, dependent upon the information known to the officers at the time of the seizure, to believe that the object was evidence or an element of a crime. *Williams, supra,* p 660; *People v Alfafara,* 140 Mich App 551, 557; 364 NW2d 743 (1985). Here, on the basis of the information provided by the 911 emergency dispatcher, the police officers were put on notice that there was a possibility that a shooting had occurred at that location. Under the circumstances, the police officers had probable cause to believe that the weapon was evidence or an element of a crime. Third, the discovery of the evidence was inadvertent, because the police officers were on the premises to investigate the report of a shooting, not to search defendant's motel room for weapons or controlled substances. Finally, once the officers entered the motel room, it was not clear that defendant was the only individual present. Thus, given the nature of the circumstances, it was not unreasonable for the police officers to look in the bathroom. Once they were there, the remaining contraband evidence was in plain view.

In conclusion, we are definitely and firmly convinced that a mistake was made. The trial court's decision granting defendant's motion to suppress the evidence was clearly erroneous.

Reversed and remanded. We do not retain jurisdiction.