PEOPLE v LEMONS

Docket No. 308565. Submitted February 12, 2013, at Detroit. Decided
  February 21, 2012, at 9:05 a.m. Leave to appeal sought.
    Cory Dereail Lemons was charged in the Wayne Circuit Court
    with possession with intent to deliver 50 grams or more but less
    than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), and posses-
    sion with intent to deliver less than 5 kilograms or fewer than
    20 plants of marijuana, MCL 333.7401(2)(d)(*iii*), as a fourth-
    offense habitual offender, MCL 769.12. Defendant's neighbor
    reported to the police on a weekday afternoon that the front
    door of defendant's condominium was wide open, swinging back
    and forth. The police confirmed this information, which was
    consistent with a breaking and entering, received no response to
    repeated knocking, and then entered the residence to ascertain
    if anyone was inside who needed assistance and to secure the
    home. The police found marijuana residue on the kitchen
    counter and two large bags of suspected marijuana in plain view
    in the basement; no one was found in the house and the police
    sought a search warrant on the basis of the drugs which had
    been found. The court, Margie R. Braxton, J., granted defen-
    dant's motion to quash, concluding that the drug evidence was
    seized as a result of an illegal search, and dismissed the charges.
    The prosecution appealed.

        The Court of Appeals *held*:

        1. In general, a search conducted without a warrant is
    unconstitutional under both the United States and Michigan
    Constitutions. The emergency-aid exception to the warrant
    requirement allows the police to enter a dwelling without a
    warrant under circumstances in which they reasonably believe,
    based on specific, articulable facts, that some person within is in
    need of immediate aid. After entering the dwelling the police
    may seize any evidence that is in plain view during the course of
    their legitimate emergency-aid activities. The entry must be
    limited to determining whether emergency aid is needed and
    the police may not do more than is reasonably necessary to
    determine whether a person is in need of any assistance, and to
    provide that assistance. In this case, because the warrantless

search of defendant's home was justified under the emergency-aid exception, the trial court improperly granted defendant's motion to quash. The front door of the residence was wide open, swinging in the wind, which was consistent with a suspected break in and home invasion, and there was no evidence that anyone was home. On these facts it was reasonable for the police to enter the residence to search for any victims who may have needed aid and to search for suspects; the police did not enter the house because they thought they would find drugs. The needs of law enforcement and the demands of public safety would not have been met in this case if the police officers had been required to walk away from defendant's residence without further investigation.

2. Even if the police search was not justified under the emergency-aid exception to the warrant requirement, exclusion of the evidence was not required because the police were acting in good faith when they entered the residence to administer emergency aid; the exclusionary rule does not apply to nonculpable, innocent police conduct.

Orders granting defendant's motions to quash and for dismissal reversed and case remanded for further proceedings.

SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — EMERGENCY-AID EXCEPTION — REASONABLENESS OF ENTRY.

The emergency-aid exception to the warrant requirement allows the police to enter a dwelling without a warrant under circumstances in which they reasonably believe, based on specific, articulable facts, that some person within is in need of immediate aid; after entering the dwelling the police may seize any evidence that is in plain view during the course of their legitimate emergency-aid activities; the entry must be limited to determining whether emergency aid is needed and the police may not do more than is reasonably necessary to determine whether a person is in need of any assistance, and to provide that assistance.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals for the people.

*Gerald M. Lorence* for defendant.

Before: RIORDAN, P.J., and HOEKSTRA and O'CONNELL, JJ.

RIORDAN, P.J. The prosecution appeals as of right the trial court's order granting defendant's motion to quash and order of dismissal. Defendant was charged as a fourth-offense habitual offender, MCL 769.12, with possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), and possession with intent to deliver less than 5 kilograms or fewer than 20 plants of marijuana, MCL 333.7401(2)(d)(*iii*). The trial court concluded that the drug evidence was seized as a result of an illegal search, granted defendant's motion to quash, and dismissed the case. We reverse the trial court's order granting defendant's motion to quash and the order of dismissal.

## I. FACTUAL BACKGROUND

Van Buren Township police officer Derek Perez and another officer were dispatched to defendant's condominium on Friday, November 13, 2011, at about noon, to respond to a report that the front door was open and blowing in the wind; the officers arrived at the residence and confirmed that the door indeed was open and blowing in the wind. There was no observable damage to the door. The officers announced their presence, knocked on the door several times, and rang the doorbell, but no one came to the door.

Because the door to the residence was open, the officers suspected that there might have been a recent home invasion. Officer Perez testified that an open door was consistent with a breaking and entering and that there is not always damage to a door in a breaking and entering. He testified that he would not leave a resi-

dence with the door open for fear there was someone inside. Thus, the officers entered the residence to ascertain if anyone was inside the condominium and to secure the residence.

As soon as the officers entered the kitchen, they smelled a strong odor of marijuana and observed marijuana residue on the counter. Officer Perez testified that they continued to search the house looking for persons and to ensure that the house was secure. He said they were not in the condo to search for evidence of a crime. When the officers proceeded to the basement, they found two large bags of suspected marijuana in plain view. They did not locate anyone in the residence. The police then sought a search warrant.

Detective Christopher Valinski and Detective Michael Rini arrived at the residence and executed the search warrant. They seized cocaine, marijuana, clear plastic bags, a scale, and paperwork from the kitchen. They also discovered cocaine in one of the bedrooms and marijuana from the basement. Detective Valinski located a DTE energy bill with defendant's name on it. Thus, when defendant drove near the residence, the police executed a stop on the vehicle. While defendant admitted that the marijuana belonged to him, he disavowed any knowledge of the cocaine.

Defendant filed a motion to quash and dismiss, arguing that the search was illegal because the police entered the condominium without a search warrant and without proper justification. Despite the prosecution's arguments to the contrary, the trial court agreed with defendant. The trial court ruled that the responding officers lacked articulable reasons for entering the residence without a warrant. The court granted defendant's motion to quash and dismissed the case. The prosecution now appeals.

## II. SEARCH AND SEIZURE

### A. STANDARD OF REVIEW

"This Court reviews a trial court's decision on a motion to quash the information for an abuse of discretion." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). However, "[t]o the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Id*.

### B. EMERGENCY-AID EXCEPTION

Our state and federal constitutions guarantee the right against unreasonable searches and seizures. *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000). The Fourth Amendment of the United States Constitution is generally understood to provide the same protections as article 1, § 11 of the Michigan Constitution. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). As we have repeatedly recognized, the "touchstone of the Fourth Amendment is reasonableness." *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005), quoting *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) (quotation marks omitted). Thus, the reasonableness of a search and seizure is analyzed on the basis of the facts and circumstances of each case. *Brzezinski*, 243 Mich App at 433.

"Generally a search conducted without a warrant is unreasonable[.]" *Id*. However, there are numerous exceptions to this general precept. One such exception is the emergency-aid exception. "[T]he emergency-aid exception to the warrant requirement allows police officers to enter a dwelling without a warrant under circumstances in which they reason-

ably believe, based on specific, articulable facts, that some person within is in need of immediate aid." *People v Tierney*, 266 Mich App 687, 704; 703 NW2d 204 (2005); see also *Brigham City, Utah v Stuart*, 547 US 398, 403; 126 S Ct 1943; 164 L Ed 2d 650 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").[1] After entering the dwelling, "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey v Arizona*, 437 US 385, 393; 98 S Ct 2408; 57 L Ed 2d 290 (1978). However, "the entry must be limited to the justification therefor, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance." *People v Davis*, 442 Mich 1, 26; 497 NW2d 910 (1993).

In the instant case, two officers were dispatched to defendant's condominium because an anonymous individual reported that the door to the residence was open and blowing in the wind at midday on Friday, November 13, 2011. When the police officers arrived at the location, they confirmed that the door was open and blowing in the wind. Officer Perez specifically testified that they suspected a home invasion had occurred. He also clarified that in his experience, an open door was consistent with a breaking and entering and that there is not always damage to a door as a result of a breaking

---

[1] Although such behavior could conceivably be construed as a community caretaking function, the Michigan Supreme Court has held that "when the police are investigating a situation in which they reasonably believe someone is in need of immediate aid, their actions should be governed by the emergency aid doctrine, regardless of whether these actions can also be classified as community caretaking activities." *People v Davis*, 442 Mich 1, 25; 497 NW2d 910 (1993).

and entering. Further, the police officer would not leave a residence with a door swinging open for fear someone may be inside.

The officers knocked on the door, rang the doorbell, and repeatedly announced their presence. No one came to the open door. When asked why he would not simply shut the door and leave the residence, Officer Perez responded: "Possible sus--victim inside, suspects inside." Hence, suspecting a home invasion, to secure the premises and locate any individuals inside, the officers entered the home and found the marijuana.

The officers' behavior in the instant case was justified under the emergency-aid exception to the warrant requirement. This is not a case in which the officers suspected drug activity. Instead, the officers were specifically dispatched to the residence on a report of an open door to a residence blowing in the wind. An open door to a residence was particularly unusual considering that it was noon, on a weekday afternoon in November in Michigan. The fact that there was no damage to the door was of little significance, as it was consistent with the officers' experience that home invasions occurred without damage to the door. Furthermore, Officer Perez steadfastly maintained that they entered the condominium because they feared that a home invasion had occurred and that there could be victims or suspects inside, not because they thought they would find drugs. As the United States Supreme Court has recognized, "the role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties." *Michigan v Fisher*, 558 US 45; 130 S Ct 546, 549; 175 L Ed 2d 410 (2009) (quotation marks, citation, and brackets omitted). The officers' behavior in this case was consistent with this role.

In *State v Alexander*, 124 Md App 258, 262; 721 A2d
275 (1998), the police were dispatched to a residence
because an anonymous individual had reported that he
believed his neighbor was not home and that the
basement door was wide open. When the police arrived,
they observed no signs of forced entry. *Id.* at 263. After
announcing their presence, the officers entered the
home and discovered marijuana. *Id.* at 263-264. The
Court of Special Appeals of Maryland upheld the search,
finding that the police officers were justified in entering
the home. *Id.* at 280-281. The court determined that the
officers acted reasonably because there was a "real
possibility that the homeowners . . . had been injured by
intruders or were at that very moment in some sort of
distress." *Id.* at 282. As in this case, the officers were
responding to a phone call about an open door of a
residence, during the day in November. Also similar,
there was no damage to the door and no one answered
when the officers repeatedly announced their presence.

*Johnson v City of Memphis*, 617 F3d 864, 869 (CA 6,
2010) also is analogous. That case involved a 911
hang-up call, an unanswered return call, a house with
an open door, and no response when the police an-
nounced their presence. The court found that the police
were justified in "entering the home to sweep for a
person in need of immediate assistance under the
emergency aid exception." *Id.* at 870. Similarly, the
police in this case were alerted by a phone call that
something may have been amiss in defendant's home,
as the door was wide open and blowing in the wind.
When the police arrived, no one responded to their
knocks and the door was still blowing in the wind. It
was reasonable for the police officers, when confronted
with these facts, to enter the home to ensure that
anyone in need of emergency aid would receive assis-
tance. As the United States Supreme Court has held,

"[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Fisher*, 130 S Ct at 549 (quotation marks and citation omitted). The emergency-aid exception is not an inquiry into hindsight. *Id*. "[T]he needs of law enforcement or the demands of public safety" would not be met in this case if we were "to require officers to walk away from a situation like the one they encountered here." *Id*. Therefore, we hold that the emergency-aid exception applies and justified the officers' behavior.[2]

Furthermore, there was a very real possibility that someone could have been inside who needed police assistance. In such a scenario, there would be consternation in the community if the officers turned and left the residence without further investigation. In such a situation, the criticism of the officers would be justified, as the public relies on the police to help in emergencies. Outrage with such a scenario would be further proof that the police officers acted reasonably in entering the condominium in this case.

Moreover, even if the officers' behavior fell short of satisfying the criteria set forth in the emergency-aid exception, the exclusionary rule is not the remedy here. As this Court recently recognized in *People v Hill*, 299 Mich App 402, 411; 829 NW2d 908 (2013), "there is no

---

[2] Alternatively, police also could be exercising their community caretaking function when securing a house whose door was wide open and blowing in the wind. As stated earlier, such circumstances are unusual during a November weekday afternoon in Michigan. "Although there were no signs of forced entry or sounds of someone in distress, the circumstances were such that an officer could reasonably conclude that defendant may be in need of aid or assistance." *People v Hill*, 299 Mich App 402, 409; 829 NW2d 908 (2013). Accordingly, "the community caretaking exception to the warrant requirement was implicated" and the "warrantless entry into defendant's home by police did not violate the protections against unreasonable searches and seizures[.]" *Id*. at 405.

need to invoke the exclusionary rule, because the good-faith exception to the rule has gradually been extended by the courts to situations outside its traditional or historical contexts, and the police officers in this case were clearly acting in good faith." Similarly, in *Davis v United States*, 564 US ___; 131 S Ct 2419, 2426-2427; 180 L Ed 2d 285 (2011), the United States Supreme Court recognized that "[w]here suppression fails to yield appreciable deterrence, exclusion is clearly . . . unwarranted." (Quotation marks and citation omitted).

In this case, the police officers entered the residence because they believed people could be inside and were in need of immediate aid. This is not the type of police conduct that should be deterred. The police officers were acting in good faith when they entered the residence to administer emergency aid and the exclusionary rule should not be applied to this the type of "nonculpable, innocent police conduct." *Id.* at ___; 131 S Ct at 2429 (quotation marks and citation omitted). Rather than deterring misconduct, applying the exclusionary rule in this case "would only deprive citizens of helpful and beneficial police action." *Hill*, 299 Mich App at 414. Therefore, even if we were to agree that the police officers' conduct failed to satisfy constitutional mandates, the remedy would not be suppression of the evidence.

### III. CONCLUSION

The officers behaved reasonably when entering defendant's residence pursuant to the emergency-aid exception to the warrant requirement of the Fourth Amendment. Furthermore, even if we were to construe the officer's behavior as a constitutional violation, this is not a case in which the exclusionary rule is applicable because the officers were acting in good faith when they

attempted to render emergency aid to members of the community. We reverse the lower court orders and remand for further proceedings.

HOEKSTRA and O'CONNELL, JJ., concurred with RIORDAN, P.J.