# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 13, 2015

Plaintiff-Appellant,

v

No. 318514
Oakland Circuit Court

WASEAN MASSON TAIT,

LC No. 2013-246192-FH

Defendant-Appellee.

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

The prosecution appeals as of right from a circuit court order granting defendant's motion to dismiss a charge of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), after the court granted defendant's motion to suppress the evidence. We reverse and remand for further proceedings consistent with this opinion.

The police went to defendant's house to investigate a security alarm that had sounded. Upon approaching the home, they heard the alarm, but saw no other signs of forced entry. The police found a back door closed, but unlocked, and entered the house to check for intruders or a person in need of assistance. Inside, the police uncovered marijuana being grown in defendant's basement. Defendant was charged, and before trial, defendant filed a motion to suppress the evidence. The prosecution argued that the entry into defendant's house was lawful under the exigent circumstances or emergency aid exceptions to the warrant requirement. The trial court disagreed and suppressed the evidence, and thereafter dismissed the charge against defendant.

The prosecution argues that the trial court erred in suppressing the evidence against defendant because the warrantless search and seizure was justified by the exigent circumstances and the emergency aid exceptions to the warrant requirement. We agree.

The trial court's factual findings at a suppression hearing are reviewed for clear error, but its ultimate ruling on a motion to suppress is reviewed de novo on appeal. *People v Davis,* 250 Mich App 357, 362; 649 NW2d 94 (2002).

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak,* 461 Mich 411, 417; 605 NW2d 667 (2000). "A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant or without

-1-

a warrant where the police officer's conduct does not fall within one of the specific exceptions to the warrant requirement." *People v Hellstrom,* 264 Mich App 187, 192; 690 NW2d 293 (2004). There are a number of exceptions to the warrant requirement. These include exigent circumstances, *People v Slaughter,* 489 Mich 302, 311-312; 803 NW2d 171 (2011), emergency aid, *People v Lemons,* 299 Mich App 541, 545; 830 NW2d 794 (2013), and community caretaking. *Slaughter,* 489 Mich at 312.

The exigent circumstances exception allows the police to enter a house without a warrant:

Pursuant to the exigent circumstances exception . . . the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. If the police discover evidence of a crime following the entry without a warrant, that evidence may be admissible. [*In re Forfeiture of $176,598,* 443 Mich 261, 271; 505 NW2d 201 (1993).]

When investigating "an apparent breaking and entering," there is no requirement that the police actually see evidence being destroyed, intruders, or persons in peril to justify the application of the exigent circumstances exception. See *id.*

The exigent circumstances exception has been applied to cases involving the activation of residential security alarms. For example, in *In re Forfeiture of $176,598,* the police responded to a residential security alarm late at night. The alarm was sounding when the police arrived. A window was broken, the security bars inside the window had been pushed aside, a light was on inside, and burglary tools (a lug wrench, a bar, a skull cap) were on the ground beneath the window. The police entered through the broken window to search for intruders. *Id.* at 262. The Court held that the evidence established "probable cause to believe that a crime recently had been committed on the premises and that the premises contained evidence or the perpetrators of the suspected crime." *Id.* at 272. The same evidence of a break-in also "constituted specific and objective facts indicating the existence of an actual emergency." *Id.* The Court explained:

It was highly possible that the intruders were still present and that the inhabitants of the home were in danger. Officers . . . testified that the purposes of their search were to ascertain the presence of intruders and to secure the premises so that if an intruder was still inside, he would be unable to escape. [*Id.*]

In *People v Williams,* 160 Mich App 656; 408 NW2d 415 (1987), the Court approved a warrantless entry of a home under similar circumstances. In that case, security alarms had gone off at two houses on the same street. The police went to the first house and left after finding that the windows and doors were secure. En route to the second house, the officers heard a security alarm sound at a third house and stopped to investigate. *Id.* at 658-659. They found that a window in the back of the house was open. The blinds had been knocked askew, there were visible fresh pry marks around the window, the security alarm wire had been tampered with, and

there were footprints in the snow between the back fence and the window. *Id.* at 661. The Court found that these facts created probable cause to "believe that a burglary had been committed on the premises" and "that the premises would contain evidence of that burglary." *Id.* It noted that there was "a need to secure the premises against further intrusion and, quite possibly, to determine whether the burglars had done anything requiring immediate action to prevent further property damage or personal injury." *Id.* at 665.

Cases like *In re Forfeiture of $176,598* and *Williams* indicate that if there is probable cause to believe that a break-in occurred, there is an emergency situation justifying a warrantless entry. While those cases involved more obvious signs of illegal entry than the current case, we do not find that the facts in the current case to be sufficiently distinguishable. Here, the police were dispatched to defendant's home to investigate a sounding home alarm that was set off by motion in defendant's foyer. While there were no obvious signs of burglary, the back door was unlocked. The responding officer testified that it was police policy to check the outside of the home, and, if the ground level was secure, there was no need to enter. Here, the officer found the back door to be unsecured. The officer also testified that she could hear the alarm sounding as she approached the home and that the officers performed a check of the home exterior, including looking inside the windows. Based on the circumstances presented, there was probable cause to justify entry into the home.

Other jurisdictions have reached similar conclusions. Most comparable is *United States v Tibolt,* 72 F3d 965 (CA 1, 1995), where the court found that there was probable cause to believe that a break-in occurred because the recently triggered alarm, coupled with the unlocked door and the homeowner's absence indicated that the alarm had not gone off accidentally. The facts of the current case and *Tibolt* are parallel. One distinction is that in *Tibolt,* the responding officer attempted to elicit a response from persons inside the home before entering, whereas in this case, the officers did not knock or announce their presence. *Id.* at 970. However, the officer in this case testified that her primary concern was officer safety, and that she did not want to give away the officers' presence to any intruders inside the home. This is a legitimate concern, and we do not find this distinguishing fact to be so significant to eliminate a finding of probable cause.[1]

Alternatively, we also hold that the emergency aid exception could apply to this situation. The emergency aid exception allows the police to enter a protected area without a warrant "under circumstances where they believe some person is in need of assistance or to prevent serious harm to someone." *People v Davis,* 442 Mich 1, 12; 497 NW2d 910 (1993). Under the emergency aid exception:

> [P]olice may enter a dwelling without a warrant when they reasonably believe that a person within is in need of immediate aid. They must possess specific and articulable facts that lead them to this conclusion. In addition, the entry must be

---

[1] Other cases have held that the sounding of a security alarm and an open or closed but unlocked door provides exigent circumstances. See, e.g., *United States v Dighera,* 2 F Supp 2d 1377 (D Kan, 1998), *United States v Porter,* 288 F Supp 2d 716 (WD Va, 2003), and *United States v Brown,* 449 F3d 741 (CA 6, 2006).

limited to the justification therefore, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance. [*Id.* at 25-26 (footnotes omitted).]

The exception does not require that the officers have "ironclad proof of a likely serious, life-threatening injury"; it "requires only an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid." *Michigan v Fisher,* 558 US 45, 47, 49; 130 S Ct 546; 175 L Ed 2d 410 (2009) (citations and internal quotation marks omitted).

Most cases applying the emergency aid exception involve circumstances where the police have information that someone was in the home and could be in need of assistance due to apparent injury or risk of injury. See, e.g., *Fisher,* 558 US at 45-46; *City of Troy v Ohlinger,* 438 Mich 477, 480, 483; 475 NW2d 54 (1991); *People v Beuschlein,* 245 Mich App 744, 756; 630 NW2d 921 (2001); *People v Tierney,* 266 Mich App 687, 691, 704-705; 703 NW2d 204 (2005). However, it has been extended to circumstances where the police do not have such information but circumstances suggest the possible presence of a person in need of assistance. This Court has addressed the emergency aid exception in two recent cases: *Lemons,* 299 Mich App 541 and *People v Hill,* 299 Mich App 402; 829 NW2d 908 (2013). In *Lemons,* someone called the police to report that the defendant's front door was standing open. Officers responded and found the door "open and blowing in the wind." There was no sign of forced entry. The officers announced their presence, knocked on the door, and rang the doorbell, but did not receive a response. They entered to look "for persons and to ensure that the house was secure" and found a large amount of marijuana in the basement. *Lemons,* 299 Mich App at 543-544. This Court upheld the search under the emergency aid exception. It explained:

This is not a case in which the officers suspected drug activity. Instead, the officers were specifically dispatched to the residence on a report of an open door to a residence blowing in the wind. An open door to a residence was particularly unusual considering that it was noon, on a weekday afternoon in November in Michigan. The fact that there was no damage to the door was of little significance, as it was consistent with the officers' experience that home invasions occurred without damage to the door. Further, Officer Perez steadfastly maintained that they entered the condominium because they feared that a home invasion had occurred and that there could be victims or suspects inside, not because they thought they would find drugs. As the United States Supreme Court has recognized, "the role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties." The officers' behavior in this case was consistent with this role.

* * *

Furthermore, there was a very real possibility that someone could have been inside who needed police assistance. In such a scenario, there would be consternation in the community if the officers turned and left the residence without further investigation. In such a situation, the criticism of the officers would be justified, as the public relies on the police to help in emergencies. Outrage with such a scenario would be further proof that the police officers acted

reasonably in entering the condominium in this case. [*Id.* at 547-549 (citation omitted).]

In *Hill,* a neighbor asked the police to check on the defendant because she had not seen or heard from him for several days. The officers found uncollected mail in the mailbox and a telephone directory sitting on the porch. They knocked and announced their presence, but did not receive a response. The draperies were drawn and they could not see inside. They opened an unlocked window and called out inside, but still did not receive a response. "[T]here were no visible signs of a home invasion, no unusual odors emanating from the home, no signs of violence, and no sounds of someone in distress." They entered the house to look for the defendant and found marijuana in the bedroom. *Hill,* 299 Mich App at 407-408. This Court upheld the search under the emergency aid aspect of the community caretaking exception despite the absence of any "direct evidence definitively showing that defendant was present and in actual need of aid or assistance." *Id.* at 409. It explained:

> Imagine that the police officers had decided against entering defendant's house and that defendant was inside unconscious or otherwise unable to communicate and in critical need of medical attention as a result of a criminal act or physiological event. In such a scenario, if defendant had later died due to a lack of timely aid, the community uproar over the officers' failure to enter the home would be deafening, and public criticism regarding the lack of police action would be, in our view, reasonable and deserved in light of the surrounding circumstances. [*Id.* at 410-411 (footnotes omitted).]

We find the reasoning in *Lemons* and *Hill* applicable to the current case. While there was no direct evidence that defendant was in need of assistance, the sounding home alarm combined with the unlocked door was sufficient to provide specific and articulable facts justifying a reasonable belief that a person within was in need of immediate aid. *Davis,* 442 Mich at 25-26. Therefore, the trial court erred in rejecting the emergency aid exception.[2] Moreover, we echo this Court's concern in *Hill* and *Lemons* regarding the importance of police response to potential emergency situations. If a person inside the home was in need of assistance, and the officers merely left the scene without further investigation, the community could justifiably criticize the

---

[2] Alternatively, the police could also be exercising their community caretaking function when investigating a home where a home alarm was sounding. Community caretaking functions are those police functions "that are separate from their duties to investigate and solve crimes." *Davis,* 442 Mich at 20. Here, the police responded to a sounding home alarm in a private residence. "Although there were no signs of forced entry or sounds of someone in distress, the circumstances were such that an officer could reasonably conclude that defendant may be in need of aid or assistance." *Hill,* 299 Mich App at 409. Accordingly, "the community caretaking exception to the warrant requirement was implicated" and the "warrantless entry into defendant's home by police did not violate the protections against unreasonable searches and seizures[.]" *Id.* at 405.

inaction by the police. "[T]he public relies on the police to help in emergencies," and that is precisely the function performed by the police in this instance. *Lemons,* 299 Mich App at 549.

Finally, the prosecution contends that even if the entry and search were not justified under any exception, suppression is not appropriate under the good-faith exception to the exclusionary rule. The prosecution failed to preserve this issue by raising it in the trial court. Therefore, review is limited to plain error affecting substantial rights. *People v Carines,* 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The Supreme Court has recognized that the exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect[.]" *United States v Calandra,* 414 US 338, 348; 94 S Ct 613; 38 L Ed 2d 561 (1974). "[A]pplication of the exclusionary rule is inappropriate in the absence of governmental misconduct." *People v Frazier,* 478 Mich 231, 250; 733 NW2d 713 (2007). This Court held that suppression was not appropriate in both *Hill,* 299 Mich App at 411-415, and *Lemons,* 299 Mich App at 549-550, because the police had some objective basis for concluding that what was essentially a welfare check was necessary. The *Hill* Court stated that "one might be able to infer or find misconduct or deliberate, reckless, or grossly negligent disregard for the Fourth Amendment" when there is "little to no basis" for entering a house. *Hill,* 299 Mich App at 415. In this case, the police had an objective basis for concluding that a welfare check was necessary, and the officer's testimony did not reveal that she acted deliberately, recklessly, or grossly negligent in performing her duties. Thus, the trial court's application of the exclusionary rule constituted plain error.

Reversed and remanded. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell