*In re* FORFEITURE OF $176,598

Docket No. 93248. Argued March 2, 1993 (Calendar No. 1). Decided
    August 17, 1993.
  The Wayne County prosecutor brought an action in the Wayne
    Circuit Court for civil forfeiture of certain monies recovered by
    the police in a search without a warrant of the residence of
    Nathaniel Wilson, alleging use in drug trafficking. The court,
    Michael J. Talbot, J., concluded that Wilson was a drug traf-
    ficker, and ordered forfeiture. The Court of Appeals, SULLIVAN,
    P.J., and D. E. HOLBROOK, JR., and McDONALD, JJ., reversed in
    an unpublished opinion per curiam, holding that the search of
    the residence was illegal (Docket No. 101884). The people
    appeal.
    In a unanimous opinion by Justice MALLETT, the Supreme
    Court *held:*
    The police may enter a dwelling without a warrant, pursuant
    to the exigent circumstances exception, if the officers have
    probable cause to believe that a crime was recently committed
    on the premises and that the premises contain evidence or
    perpetrators of the suspected crime. The police further must
    establish the existence of an actual emergency on the basis of
    specific and objective facts indicating that immediate action is
    necessary to prevent the imminent destruction of evidence, to
    protect themselves or others, or to prevent the escape of a
    suspect. If, following such an entry, evidence of a crime is
    discovered, it may be admissible.
    In this case, the police were responding to a residential
    security alarm after midnight and encountered evidence of
    forced entry sufficient to provide probable cause to believe that
    a crime recently had been committed on the premises and that
    the premises contained evidence or the perpetrators of the
    suspected crime. This same indicia of a criminal entry consti-
    tuted specific and objective facts indicating the existence of an
    actual emergency.
    Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *John D. O'Hair,* Pros-

ecuting Attorney, *Andrea L. Solak,* Chief, Special Operations, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Mary Sue Czarnecki,* Assistant Prosecuting Attorney, for the people.

*Ben M. Gonek* for the claimant.

MALLETT, J. We must determine whether the Court of Appeals erroneously reversed a trial court's denial of a forfeiture claimant's motion for summary disposition. Because the police officers' entry of the claimant's residence was constitutional pursuant to the exigent circumstances exception to the warrant requirement, we reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

I

On December 17, 1986, two Detroit police officers responded to an activated residential security alarm on Corbett Street. Upon their arrival, the officers checked the residence and its perimeter for signs of forced entry. A light was on inside the home. A small casement window was broken, and security bars previously located inside the window were pushed away. On the ground outside the window, the officers found a lug wrench, a bar, and a stocking cap. The officers radioed for a backup police unit. When the additional police officers arrived, they boosted the original officers through the broken casement window and into the home.

Two of the officers searched the home for intruders. On the main floor level, the officers entered what appeared to be a den in which clothes were strewn about the room. A trunk was in the middle of the room. The officers failed to find any intruders and consequently released the backup unit.

The officers then searched the home for informa-

tion that would assist them in identifying its owner. One of the officers found a telephone bill belonging to Bessie Wilson, a relative of claimant, and called the telephone numbers listed on the bill. The other officer found an envelope with "$4,000" written on it. The envelope contained forty one-hundred dollar bills. The officers then found a brown paper bag on the trunk in the den; "$10,000" and a name were written on the bag, which, in fact, contained a large sum of money. In the trunk were two large bags of money, one of which was a shopping bag that had torn from the weight of the cash. The officers immediately contacted the police unit that had just left the home. Unable to contact the owner of the residence or otherwise satisfactorily secure the premises, the officers removed the money from the home.[1]

The police transported the money to the Ninth Precinct station, where an inspector directed the officers to take the cash to the property room at police headquarters. After being counted in the property room, the money was taken to an inspector's office. The police placed the money in a cardboard box, set the box in a closet, and closed the closet door. A controlled-substance-trained canine was released in the room. After sniffing around the room for a short period of time, the "drug dog" moved quickly to the closet where the money was located. After the closet door was opened, the dog began carrying bundles of the money to its trainer, indicating that the money had been in proximity to controlled substances.

The claimant, Nathaniel Wilson, asserted ownership of the seized cash, and the Wayne County prosecutor filed a petition for civil forfeiture pursuant to MCL 333.7501 *et seq.*; MSA 14.15(7501) *et seq.* The claimant moved for summary disposition

---

[1] The police left a note in the mailbox for the owner of the home.

pursuant to MCR 2.116(C)(8)[2] and (10),[3] and the prosecution answered and filed an amended petition.[4] The trial court denied the claimant's motion for summary disposition. Following testimony from several witnesses, including the claimant,[5] the trial court concluded that the claimant was a drug trafficker and ultimately entered a forfeiture order. In an unpublished per curiam opinion, the Court of Appeals reversed, vacated the forfeiture order, and held that the claimant's motion for summary disposition should have been granted because of the illegal search of claimant's residence. This Court granted the state's application for leave to appeal. 440 Mich 889 (1992).

II

The Fourth Amendment of the United States Constitution[6] and art 1, § 11 of the Michigan Con-

[2] MCR 2.116(C)(8) provides, "The opposing party has failed to state a claim on which relief can be granted."

[3] MCR 2.116(C)(10) provides, "Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

[4] The claimant owns a number of rental properties in the City of Detroit and uses several of them as a residence. Approximately five months before the Corbett Street search and seizure, the police executed a search warrant at a residence on Chalmers Avenue owned by claimant. The police seized marijuana, cocaine, cash, firearms, and a safe containing jewelry, a beeper, and additional cash. Forfeiture proceedings were not initiated immediately against the claimant. The amended petition sought to include the property seized in this first search. The Court of Appeals held that proceedings with regard to the first seizure were not timely instituted and vacated the order of forfeiture for the property seized at that address. Because the prosecution does not assign error to that portion of the Court of Appeals opinion, we decline to address the issue.

[5] Claimant testified that the money confiscated at his residence was generated by two convenience stores and his rental properties. He also testified that he was a very successful gambler, but that because all his respective winnings were under $10,000, no records existed.

[6] US Const, Am IV provides:

stitution of 1963[7] grant individuals the right to be secure against unreasonable searches and seizures. Generally, evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).[8] This principle, commonly referred to as the "exclusionary rule," is a cornerstone of American jurisprudence that affords individuals the most basic protection against arbitrary police conduct.[9] The exclusionary rule is applicable in forfeiture proceedings. *One 1958 Plymouth Sedan v Pennsylvania,* 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965).

Generally, a warrant, supported by probable cause, is required before a search is considered reasonable. *Mapp v Ohio, supra; People v Davis,* 442 Mich 1, 10; 497 NW2d 910 (1993); *People v Blasius,* 435 Mich 573; 459 NW2d 906 (1990). The warrant requirement is "subject only to a few

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

[7] Const 1963, art 1, § 11 provides:

> The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.

[8] The exclusionary rule was actually adopted by the United States Supreme Court in *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914). Yet, the Court in *Weeks* did not extend the protections of the Fourth Amendment to state criminal trials. The Fourth Amendment was made applicable to the states through the Fourteenth Amendment in *Mapp v Ohio, supra.*

[9] For a critical discussion of the exclusionary rule, see Dressler, Understanding Criminal Procedure, § 120, pp 241-247.

specifically established and well-delineated exceptions." *Horton v California,* 496 US 128, 133, n 4; 110 S Ct 2301; 110 L Ed 2d 112 (1990), quoting *United States v Ross,* 456 US 798, 825; 102 S Ct 2157; 72 L Ed 2d 572 (1982); *Tallman v Dep't of Natural Resources,* 421 Mich 585, 598; 365 NW2d 724 (1984). The established exceptions to the warrant requirement include: (1) searches incident to a lawful arrest, (2) automobile searches, (3) plain view seizure, (4) consent, (5) stop and frisk, and (6) exigent circumstances. *People v Davis, supra* at 10; *People v Toohey,* 438 Mich 265, 271, n 4; 475 NW2d 16 (1991). Each of these exceptions, while not requiring a warrant, still requires reasonableness and probable cause.

In *People v Blasius, supra* at 583, this Court noted that although "the precise contours of the exigent circumstances exception remain hazy, such an exception clearly does exist." The boundaries of the exception were "hazy" because of the manner in which the doctrine has developed. Instead of immediately recognizing the specific exigencies that justify entries without warrants, the United States Supreme Court has gradually intimated the parameters of the exception over a forty-five year period. See *Johnson v United States,* 333 US 10, 15; 68 S Ct 367; 92 L Ed 436 (1948) (recognized that "exceptional circumstances" could justify a search without a warrant, but none existed because "[n]o suspect was fleeing or likely to take flight. The search was of permanent premises, not of a moveable vehicle. No evidence or contraband was threatened with removal or destruction"); *McDonald v United States,* 335 US 451, 456; 69 S Ct 191; 93 L Ed 153 (1948) ("We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation

made that course imperative"); *United States v Jeffers,* 342 US 48, 52; 72 S Ct 93; 96 L Ed 59 (1951) (invalidated a search because there was no "imminent destruction, removal, or concealment of the property intended to be seized"); *Schmerber v California,* 384 US 757, 770; 86 S Ct 1826; 16 L Ed 2d 908 (1966) (upheld the extraction of blood from a defendant for a blood-alcohol test because a police officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant . . . threatened 'the destruction of evidence' "); *Vale v Louisiana,* 399 US 30, 35; 90 S Ct 1969; 26 L Ed 2d 409 (1970) (found that no exigency existed because the seized narcotics were not about to be destroyed or removed from the jurisdiction).

The United States Supreme Court recently offered additional insight into the exigent circumstances exception and its parameters. In *Minnesota v Olson,* 495 US 91; 110 S Ct 1684; 109 L Ed 2d 85 (1990), the Court acquiesced in the Minnesota Supreme Court's treatment of the exception. There, the police suspected a defendant of being the getaway car driver in a robbery and murder. The police recovered the murder weapon and arrested the murder suspect. They later surrounded the home of two women with whom the defendant was staying, telephoned the home, and insisted that the defendant come out. As the police officer was instructing the woman, he heard a male voice say, "tell them I left." The woman did so, but the police soon entered and found the defendant hiding in a closet. *Id.* at 94.

The Court remarked that the state court "applied essentially the correct legal standard" when it held that the following exigent circumstances justify an entry of a dwelling without a warrant: (1) hot pursuit of a fleeing felon, (2) imminent

destruction of evidence, (3) the need to prevent a suspect's escape, and (4) the risk of danger to the police or others inside or outside the dwelling. The state court opined that in the absence of hot pursuit, there must be at least probable cause to believe that one or more of the latter three circumstances existed.[10] In assessing the risk of danger, the gravity of the crime and likelihood that the suspect is armed were deemed important considerations.[11] Although a grave crime was involved, the murder suspect was in custody, the murder weapon was recovered, and there was no indication that the defendant was about to flee. As a result, the Court concluded that the entry without a warrant was unconstitutional.

In *People v Blasius, supra,* this Court thoroughly examined the exigent circumstances exception and held that the risk of destruction or removal of evidence may constitute an exigency that justifies an entry into a dwelling. The police must possess probable cause that the premises contain contra-

[10] *Olson, supra* at 100.

[11] *Id.* See also *United States v Rubin,* 474 F2d 262, 268-269 (CA 3, 1973). The *Rubin* court set forth five factors for analyzing a police officer's determination that exigent circumstances existed:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant . . .

(2) reasonable belief that the contraband is about to be removed . . .

(3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought . . .

(4) information indicating the possessors of the contraband are aware that the police are on their trail . . . and

(5) the ready destructibility of the contraband and the knowledge that "efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." [Quoting *United States v Manning,* 448 F2d 992, 998-999 (CA 2, 1971).]

See also Salken, *Balancing exigency and privacy in warrantless searches to prevent destruction of evidence: The need for a rule,* 39 Hastings L J 283 (1988).

band or evidence of a crime. Additionally, where the police justify the entry for the purpose of securing the premises pending a warrant, an actual emergency supported by specific and objective facts must be shown.

The issue confronting this Court in the present case has been addressed by the Court of Appeals under similar facts, and the approach taken is particularly instructive. In *People v Williams,* 160 Mich App 656; 408 NW2d 415 (1987), two police officers heard an activated residential alarm and observed a pried-open window. Footprints in the snow directly led toward the window. One of the officers entered the home through the window and opened a back door to allow the other officer to enter. While inside, the officers searched for, but did not find, a burglar; instead, they discovered narcotics and related paraphernalia in the basement.

Relying on *People v United States Currency,* 148 Mich App 326, 331; 383 NW2d 633 (1986),[12] the Court in *Williams* held that pursuant to the exigent circumstances exception to the warrant requirement, if a police officer has probable cause to believe that a crime has been committed on the premises and that evidence of that crime could be found within, the officer may make an entry of the dwelling without a warrant where immediate action is necessary to (1) protect the police officers or others, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused. Additionally, police may make an entry of a dwelling without a warrant within a reasonable time following a breaking and entering in order to (1) secure the premises against further intrusion, (2) determine if the burglars committed an act requir-

[12] See also *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980); *People v Harris,* 95 Mich App 507; 291 NW2d 97 (1980).

ing immediate action to prevent further property damage or personal injury, or (3) aid a victim in the building who may be restrained or injured. *Williams*, 160 Mich App 665.

In *People v Davis, supra* at 24, this Court stated in dicta the probable cause showing that must be made in exigent circumstances.

> When the police act pursuant to the exigent circumstances exception, they are searching for evidence or perpetrators of a crime. Accordingly, in addition to showing the existence of an emergency leaving no time for a warrant, they must also possess probable cause that the premises to be searched contains such evidence or suspects. See *People v Blasius, supra,* pp 593-594. See also *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966); *Vale v Louisiana,* 399 US 30; 90 S Ct 1969; 26 L Ed 2d 409 (1970).[13]

Without question, the appropriate probable

---

[13] In *People v Houze,* 425 Mich 82, 90; 387 NW2d 807 (1986), this Court directly quoted *People v Dugan,* n 12 *supra,* with apparent approval and noted the exigent circumstances recognized by the Court of Appeals in that case.

> "The 'exigent circumstances' exception provides that when the police have probable cause to believe that a search of a certain place will produce specific evidence of that crime (the foundation requirements for issuance of a search warrant), there is no need for a warrant if the police also have probable cause to believe that an immediate warrantless search is necessary in order to (1) protect the officer or others, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused. *People v Harris,* 95 Mich App 507, 510; 291 NW2d 97 (1980). See *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977); *People v Plantefaber,* 91 Mich App 764, 770; 283 NW2d 846 (1979). The rationale of the exception is clear; when the police have the probable cause necessary to secure a warrant, but circumstances make it impossible for them to obtain the warrant in time, then it is 'reasonable' under the Fourth Amendment to conduct a search and to seize evidence or contraband. See *United States v Guidry,* 534 F2d 1220, 1222-1223 (CA 6, 1976)."

cause inquiry has not been uniformly addressed by the cases cited above. Those cases suggest differing quanta of belief that police must possess regarding whether a crime was committed, whether evidence or intruders are inside the premises, and whether an exigency is present. While *Olson* presented an opportunity for the United States Supreme Court to enunciate a broadly defined rule setting forth the exacting parameters of the exception, the Court stopped well short of so doing.

Arriving at the scene of an apparent breaking and entering, the police are confronted with several potential calamities. There is a very real chance that the intruders are still present. The intruders may have restrained or, worse yet, injured or killed the inhabitants of the home. Furthermore, intruders occasionally set fire or do severe damage to the dwelling that requires immediate attention in order to prevent further damage or personal injury.

Pursuant to the exigent circumstances exception, we hold that the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence,[14] (2) protect the police officers or others, or (3) prevent the escape of a suspect. If the police discover evidence of a crime following the entry without a warrant, that evidence may be admissible.

In the present case, the police were immediately

[14] *People v Blasius, supra.*

responding to a residential security alarm after midnight in the City of Detroit. When they arrived at the scene, a light was on inside the house. The officers found a broken window, and the security bars located inside the window frame were pushed away. On the ground directly beneath the window, the police discovered a lug wrench, a bar, and a skull cap. One of the officers testified that the alarm was still sounding. These preëminent indications of a recently committed criminal entry were sufficient to give the police officers probable cause to believe that a crime recently had been committed on the premises and that the premises contained evidence or the perpetrators of the suspected crime. The same indicia of a criminal entry constituted specific and objective facts indicating the existence of an actual emergency. It was highly possible that the intruders were still present and that the inhabitants of the home were in danger. Officers Terence Markesino and Stephen Jackson testified that the purposes of their search were to ascertain the presence of intruders and to secure the premises, so that if an intruder was still inside, he would be unable to escape. Because these purposes are within the scope of exigencies recognized above, the police entry in the present case was constitutionally permissible.

III

The prosecution asserts that the police officers' entry of the home in the present case was justifiable pursuant to an alternative exception to the warrant requirement, the community caretaking exception, first enunciated in *Cady v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973). The essence of the community caretaking exception is found in an oft-quoted excerpt from *Cady.*

> Local police officers . . . frequently investigate
> vehicle accidents in which there is no claim of
> criminal liability and engage in what, for want of
> a better term, may be described as community
> caretaking functions, totally divorced from the
> detection, investigation, or acquisition of evidence
> relating to the violation of a criminal statute.[15]

The prosecution urges this Court to adopt this
exception to the warrant requirement in the pres-
ent case, because, pursuant to the community
caretaking exception, the police need not possess
probable cause.[16]

Decisions of this Court and the Michigan Court
of Appeals have supported the rationale in *Cady*
and recognized the legality of community caretak-
ing searches. Typically, the community caretaking
function has been employed in automobile
searches.[17] In addition to the impoundment and
inventory of automobiles,[18] courts have included a
multiplicity of police functions within the meaning
of the community caretaking function, including
entering an apartment to remove a former girl-
friend following a domestic dispute,[19] removing an
intoxicated person from the street,[20] entering an
abandoned boat to ascertain ownership and the

---

[15] *Cady,* 413 US 441.

[16] See *People v Davis, supra,* discussed *infra* at 274.

[17] *People v Toohey,* 438 Mich 265; 475 NW2d 16 (1991); *People v Russell,* 174 Mich App 357; 435 NW2d 487 (1989); *People v Krezen,* 427 Mich 681; 397 NW2d 803 (1986); *People v Castle,* 126 Mich App 203; 337 NW2d 48 (1983); *People v McIntosh,* 110 Mich App 139; 312 NW2d 415 (1981); *People v Kramer,* 103 Mich App 747; 303 NW2d 880 (1981); *People v Siegel,* 95 Mich App 594; 291 NW2d 134 (1980); *People v Clark,* 68 Mich App 674; 243 NW2d 914 (1976).

[18] *Illinois v Lafayette,* 462 US 640; 103 S Ct 2605; 77 L Ed 2d 65 (1983); *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976); *Cady, supra.*

[19] *United States v Carlile,* 234 Ill App 3d 1063; 600 NE2d 916 (1992).

[20] *United States v Rideau,* 969 F2d 1572 (CA 5, 1992).

safety of the mariners,[21] responding to a missing vehicle complaint,[22] searching an unconscious person for identification,[23] and responding to persons likely to be in need of emergency aid.[24]

This Court recently discussed the community caretaker exception in the context of a search of a dwelling without a warrant. In *People v Davis, supra,* we noted the characteristics that distinguish it from the enumerated exceptions[25] to the warrant requirement by stating that "the community caretaking exception is only invoked when the police are not engaged in crime-solving activities."[26]

Police officers are often charged with duties unrelated to detecting criminal activity. It is the execution of these duties that embody the community caretaking function. "Indeed, many functions could be considered 'caretaking' functions as long as they are not performed to investigate or solve crimes." *Id.* at 24.

We decline to employ the community caretaking exception under the facts of the present case. Clearly, the search performed by the police officers was performed for the purpose of investigating and solving a crime. The search was not "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[27] Both of the officers who entered the home testified that the purposes of the entry were to search for intruders and to secure

---

[21] *United States v Miller,* 589 F2d 1117 (CA 1, 1978), cert den 440 US 958 (1979).

[22] *Duck v State,* 518 So 2d 857 (Ala Crim App, 1987).

[23] *State v Bies,* 76 Wis 2d 457, 470-471; 251 NW2d 461 (1977).

[24] *United States v Nord,* 586 F2d 1288, 1290-1291 (CA 8, 1978).

[25] See *id.* at 7.

[26] *Id.* at 24-25.

[27] *Cady,* 413 US 441.

the premises in an effort to thwart an attempted escape. In this case, it is unnecessary for this Court to reach the community caretaking exception because probable cause was well established. The application of the exigent circumstances exception adequately furthers the cause of justice.

IV

We hold that pursuant to the exigent circumstances exception to the warrant requirement, the police may enter a dwelling without a warrant if the officers have probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that evidence or perpetrators of the suspected crime were still present. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect police officers or others, or (3) prevent the escape of the accused. Further, if police discover evidence of a crime following an entry without a warrant, that evidence may be admissible.

We remand this case to the Court of Appeals for consideration of additional issues raised by the claimant, including the subsequent search of the trunk at the Corbett Street residence, during which police discovered and seized large quantities of cash, and the exposure of the cash to a controlled-substance-trained canine.

Reversed and remanded.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with MALLETT, J.