# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARQUIES DESHAUN DAVIS,

Defendant-Appellant.

UNPUBLISHED
June 26, 2018

No. 338101
Ingham Circuit Court
LC No. 14-000660-FH

---

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

A jury convicted defendant of felon in possession of a firearm, MCL 750.224f, possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(*v*), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to prison terms of 18 to 90 months for the felon-in-possession conviction, and 12 to 72 months each for the possession of a controlled substance convictions, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. The court thereafter denied defendant's pro se motion for relief from judgment, and it also denied his postjudgment motion to suppress evidence, for a directed verdict of acquittal, for a new trial, and for a *Ginther*[2] hearing, as well as his motion to correct the scoring of the sentencing guidelines. Defendant appeals as of right and for the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of an incident that occurred in the City of Lansing on June 10, 2014. On that date, at approximately 6:00 p.m., Lansing Police Officer John LaCross observed a one-year-old baby girl standing near the edge of the roadway in front of a house at 622 Cooper Street in Lansing. According to LaCross, the child was crying and there were no adults in the vicinity.

---

[1] The jury acquitted defendant of an additional charge of resisting or obstructing a police officer, MCL 750.81d(1).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

As he approached the girl, a four-year-old boy came from across the street and a few houses down. The boy told the officer that the girl was his sister and that their father was inside the house. Officer LaCross told the boy to go to the house and ask his father to come outside. Defendant opened the inside door of the house but left the outside storm door closed. Defendant refused LaCross's request to step outside and provide identification. LaCross observed defendant walk away from the door and into the house twice. Defendant yelled to the boy and told him to bring the girl into the house.

LaCross testified that he had concerns about the welfare of the children and wanted to confirm whether defendant was their father and whether he was competent to care for them. He reached the front porch of the house before the children. He again asked defendant for his name and identification, and defendant again provided neither. According to LaCross, defendant appeared to be "puzzled," as if he had just awakened. LaCross warned defendant that he would be arrested for obstructing his investigation into the welfare of the children if he did not provide his name and identification.

When the children reached the porch, defendant opened the exterior storm door to let the children inside. At that point, LaCross stated that he was standing between the storm door and the inside door. He was concerned that defendant would shut the inside door before he had the opportunity to determine if defendant had proper authority to care for them and whether he was competent to do so. As defendant began to close the inside door, LaCross put his foot in the door to prevent it from closing. LaCross again ordered defendant to identify himself and, when defendant again did not comply, he grabbed defendant and pulled him outside of the house. Defendant provided identification as he was being pulled out of the house.[3] Defendant was handcuffed and arrested for obstructing the investigation into the welfare of the children. Lansing Police Officer Eric Boswell performed a pat-down search of defendant for weapons and found a small plastic baggie of suspected crack cocaine in one pocket, a baggie of suspected heroin and a bindle in another pocket, and approximately $540 in cash. Defendant told the officers that he did not live at the home, and he identified Amber Morris, the children's mother, as the resident of the home. LaCross then entered the home to determine if there were any other adults or children inside. A sleeping infant was lying on the couch, but no other adults were present. LaCross noticed a handgun in plain view on the kitchen counter.

According to LaCross, Morris subsequently arrived at the home and became upset after being told that there was a gun in the house. Morris told LaCross that defendant, who is the father of her three children, did not live at the home. She gave the officers consent to search the home. During the consent search, the officers found drug paraphernalia throughout the home and ammunition on a table and entertainment center in the living room. They found a stolen .9 millimeter handgun containing 10 bullets in a holster, a magazine with bullets, a jar containing .9 millimeter bullets, two digital scales, plastic baggies, and a marijuana pipe on the kitchen counter. A Bridge card with defendant's name on it was found in a drawer beneath the counter

---

[3] As will be discussed *infra*, it is contested and a matter of some ambiguity as to when defendant produced his identification.

where the gun was located. A gym bag containing shotgun shells, handgun bullets, a pistol flashlight, and a diaper was found in an upstairs bedroom. A box of .9 millimeter ammunition was found on a dining room table.

No fingerprints were found on the gun. DNA analysis was performed on swabs obtained from the gun and the holster. A Michigan State Police forensic scientist testified that there was a mixture of DNA from at least two donors on the handgun and that at least one of the donors was male. The forensic scientist testified that there was a mixture of DNA from at least four donors on the holster and that at least one of the donors was male. The DNA evidence was insufficient to identify a specific donor, but the scientist was able to determine that male DNA was present on both the gun and the holster due to the presence of both X and Y chromosomes.

Morris acknowledged that she told the officers at the scene that she had no knowledge of a gun or drugs in her home. However, at trial, she testified that she purchased the gun for cash from an unknown male two days before defendant's arrest for her personal protection because she had been assaulted the week before. She put the extra bullets she received into a jar on top of the refrigerator. Morris also testified that she knew the gun was in her home, that she owned it, and that defendant did not know she had the gun. She denied knowing how the ammunition found in the dining room and on the entertainment center got into her house. She said that she must have taken the gun down from its location on top of the cupboard, taken the magazine off of it, and left the gun on the kitchen counter before she left for work.

Defendant was convicted and sentenced as indicated above. This appeal then ensued.

## II. ANALYSIS

## A. EXIGENT CIRCUMSTANCES

On appeal, defendant first argues that the trial court erred in ruling that his warrantless arrest was justified under the community caretaking exception to the warrant requirement. "This Court's review of a lower court's factual findings in a suppression hearing is limited to clear error, and those findings will be affirmed unless we are left with a definite and firm conviction that a mistake was made." *People v Simmons*, 316 Mich App 322, 325; 894 NW2d 86 (2016), quoting *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002). The trial court's ultimate ruling on a motion to suppress is reviewed de novo. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

Both the United States and Michigan Constitutions guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014). It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v Ramirez*, 540 US 551, 559; 124 S Ct 1284; 157 L Ed 2d 1068 (2004) (quotation marks and citation omitted). The United States Supreme Court has stated:

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home – a zone that finds its

roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. [*Payton v New York*, 445 US 573, 589-590; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (citation omitted; alterations in *Payton*).]

While we note that there are a number of exceptions under which warrantless *searches* are considered reasonable and, therefore, constitutional, e.g., *People v Hill*, 299 Mich App 402, 405-406; 829 NW2d 908 (2013), and among them is the community caretaking exception, the issue before us does not concern a warrantless *search*, but rather a warrantless *arrest*.[4]

It was undisputed that LaCross reached across the threshold of the door to grab defendant and effectuate the arrest and that this constituted an unauthorized entry into the home. Hence, we presume, in the absence of any argument to the contrary, that defendant's arrest occurred within the home, and without a warrant. In certain circumstances, a police officer may lawfully arrest a person without an arrest warrant. For example, MCL 764.15(1)(a) authorizes a warrantless arrest where "[a] felony, misdemeanor, or ordinance violation is committed in the peace officer's presence." Under MCL 750.81d(1), resisting or obstructing a peace officer is a felony. However, in this case, the issue is whether the police can enter the home of a suspect to effectuate an arrest. The short answer, set forth by this Court in *People v Rice*, 192 Mich App 240, 245; 481 NW2d 10 (1991) in a rather conclusory manner, is that "absent exigent

---

[4] Defendant's assertions that the community caretaking exception does not apply to this case are correct. In *People v Davis*, 442 Mich 1, 11-12; 497 NW2d 910 (1993), our Supreme Court explained that when the actions of agents of the state fall under the community caretaking exception, "such agents generally need not have the probable cause traditionally required in searches for evidence in order to enter into a protected area. It is well settled that in order to search for evidence of a crime, police must have probable cause that a crime has been committed and evidence of the crime is to be found in the place to be searched. However, when police are performing 'caretaking' functions, they are usually not searching for anything." See also *People v Slaughter*, 489 Mich 302, 316-317; 803 NW2d 171 (2011) (holding that that the community caretaking exception applies when a firefighter, responding to an emergency call involving a threat to life or property, reasonably enters a private residence in order to abate what is reasonably believed to be an imminent threat of fire inside). Here, LaCross was investigating the welfare of unattended young children when he effectuated a warrantless arrest because defendant obstructed his investigation into the welfare of the children. Hence, the community caretaking exception is not applicable to the warrantless arrest in this case.

circumstances, a police officer is not authorized to enter a private home to make an arrest without a warrant."

The "exigent circumstances" exception, was characterized by our Supreme Court in *In re Forfeiture of $176,598*, 443 Mich 261, 271; 505 NW2d 201 (1993), as follows:

> Pursuant to the exigent circumstances exception, we hold that the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. If the police discover evidence of a crime following the entry without a warrant, that evidence may be admissible.

See also *People v Cartwright*, 454 Mich 550, 559; 563 NW2d 208 (1997), *People v Davis*, 442 Mich at 11-12; *People v Beuschlein*, 245 Mich App 744, 749-750; 630 NW2d 921 (2001). Accordingly, under the exigent circumstances exception, the elements of probable cause and reasonableness must still be demonstrated. *Cartwright*, 454 Mich at 558; *Davis*, 442 Mich at 24. Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place. *Id.*

Here, the record reveals that LaCross found a baby girl near the side of the road crying. He did not see an adult nearby. Shortly after he made contact with the girl, a four year-old boy came from across the street and told LaCross that she was his sister. LaCross told the boy to get his father, who is defendant. When LaCross attempted to ascertain whether defendant was the father of the children and whether he was capable of providing them the care necessary to keep them from harm, defendant refused to give LaCross his name or answer any questions relative to the minor children. LaCross saw the children enter the home and had no knowledge of whether there were other children who could be a risk in the home or if there were any other adults in the home. Hence, just prior to LaCross grabbing defendant from behind his storm door, defendant had failed to comply with LaCross's lawful orders to provide his name and produce identification so that the officer could determine whether defendant was in fact the father of the unattended children, that the children were rightfully in his care, and that he was competent to watch them given the circumstances in which the officer encountered them unattended along the street. Then, LaCross grabbed defendant, presumably from inside the home, and placed him under arrest. A pat-down revealed drugs and $540 in cash. Viewing the record evidence in its totality, we conclude that at the time of the arrest, LaCross did not know whether defendant was authorized to care for the children, or whether defendant was competent to care for the children under the circumstances. Based on his initial observations and defendant's unwillingness to cooperate with the investigation, LaCross had probable cause to believe that defendant was obstructing a police investigation. He therefore, under the exigent circumstances exception to the warrant requirement, had probable cause to lawfully enter the dwelling to effectuate the

arrest of defendant. We also conclude that given the totality of the circumstances, the actions of LaCross were reasonable.

According to the factors set forth in *In re Forfeiture of $176,598*, 443 Mich at 271, we must also find:

> the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. If the police discover evidence of a crime following the entry without a warrant, that evidence may be admissible.

Relying on the record evidence as previously cited, we find that at the time of the arrest, LaCross was faced with not knowing how many minor children were in the home and whether there was a competent individual to look after the minor children. In short, because of defendant's failure to identify himself or otherwise provide information relative to the number of children in the home or defendant's relationship to them, LaCross was unable to ascertain whether the minor children were being cared for or were in danger. LaCross was therefore faced with the emergency of ensuring the safety of an unknown number of minor children. On these facts, we find that the actions of LaCross satisfy the requirements set forth by our Supreme Court in *In re Forfeiture*, 443 Mich at 271, and defendant's warrantless arrest did not violate his constitutional rights. Accordingly, defendant is not entitled to relief on this issue.[5]

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective for a myriad of reasons. Defendant raised these claims below in a motion for a new trial, which the trial court denied.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). We review the trial court's findings of fact for clear error, and review questions of constitutional law de novo. *Trakhtenberg*, 493 Mich at 47. "Clear error exists if the reviewing court is left

---

[5] We note that both parties on appeal briefed the issue of whether the trial court properly applied the community caretaking exception. However, having concluded that the community caretaking exception to the warrant requirement inapplicable to this case, we nonetheless affirm the trial court because it is well-settled that "[t]his Court will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason." *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

To establish a claim of ineffective assistance of counsel, defendant must prove: (1) that his attorney made an error, and (2) that the error was prejudicial to defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). That is, defendant must first show that trial counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). A reviewing court must analyze the issue with a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance, and this requires the defendant to overcome the presumption that the challenged action or inaction might be considered sound trial strategy. *People v Leblanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Second, defendant must show that, but for trial counsel's deficient performance, a different result would have been reasonably probable. *Russell*, 297 Mich App at 716.

Defendant first asserts that trial counsel was ineffective for failing to consult a DNA expert to rebut or negate the testimony of the prosecution's DNA expert. The decision whether to present witnesses is a matter of trial strategy, and a failure to present a witness only constitutes ineffective assistance if it deprives a defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant has not presented the proposed testimony of a DNA expert, so it is unclear how trial counsel could have effectively attacked the prosecution's DNA evidence. Defendant has also failed to provide a coherent argument as to why, when DNA testing could not conclusively establish that defendant had touched the gun, and the prosecution's DNA expert acknowledged this fact in her testimony, trial counsel would summon an expert to testify. At best, a defense expert could have emphasized what the prosecutor had already introduced. In sum, defendant's argument on this issue did not deprive him of a substantial defense and is devoid of merit. *Dixon*, 263 Mich App at 398.

Defendant also asserts that the prosecution's DNA expert's testimony detailing the inconclusive results of DNA analysis of the gun and the holster was of little relevance and was more prejudicial than probative and, therefore, trial counsel was ineffective for not objecting to the DNA expert's testimony on this basis. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010). The DNA evidence in this case was probative of a material issue—whether the gun found on the kitchen counter could be linked to defendant. Although the DNA analysis did not identify a specific donor, the analysis indicated that a male had contributed some of the DNA on both the gun and the holster. Thus, the evidence did not exclude the possibility that defendant handled both items and because defendant was the only adult male in the house at the time the gun was found, the DNA analysis was relevant to whether defendant may have possessed the gun. And because the jury was informed of the limitations of the evidence, namely, that it could not be linked to a specific donor, the evidence was not unfairly prejudicial. On this issue, the trial court correctly concluded that it would have overruled any objection to the evidence based on its

relevance or alleged prejudicial effect. Thus, a different result would not have been reasonably probable had trial counsel objected to the evidence. *Russell*, 297 Mich App at 716.

Next, defendant argues that trial counsel was ineffective for failing to impeach LaCross with inconsistent testimony from the preliminary examination and the suppression hearing. Defendant argued to the trial court that LaCross testified at the preliminary examination that defendant's identification was found during a pat-down search after he was arrested, but inconsistently testified at both the trial and the suppression hearing that defendant produced identification as he was being pulled out of the house. The trial court found that LaCross "did appear to change his testimony slightly from the preliminary examination," but concluded that failure to impeach LaCross about this inconsistency did not affect the outcome. Defendant does not explain how impeachment on this point would have made a different result reasonably probable. *Russell*, 297 Mich App at 716. The inconsistency was not significant to the weapon or controlled substance charges. Rather, it was related to the resisting or obstructing charge, a charge for which defendant was acquitted. Accordingly, the trial court did not err in finding that defendant failed to demonstrate a reasonable probability that the outcome of trial would have been different if trial counsel had impeached LaCross with this inconsistency.

Defendant also argues that trial counsel was ineffective for not requiring the prosecution to produce Officer Boswell to testify. At trial, defendant's trial counsel agreed that the evidence regarding Boswell's pat down and search of defendant could be introduced through the testimony of LaCross, who was present when the pat down occurred, which he did. Boswell's role in the investigation was not in dispute and defendant does not explain what additional testimony Boswell could have offered, or how the failure to call Boswell deprived him of a substantial defense. Accordingly, defendant has not established that defense counsel was ineffective for failing to call Boswell.

Defendant also argues that trial counsel was ineffective for failing to ensure that the trial court gave a clarifying jury instruction which he claims the parties agreed to with respect to why Boswell, who was on the prosecution's witness list, did not testify at trial. From the outset we note that our review of the record leads us to conclude that the parties agreed to provide a clarifying instruction regarding why the preliminary jury instruction on the charge of resisting or obstructing referred solely to LaCross when the information, as read to the jury, referred to "Officer LaCross and/or Officer Boswell." Defendant is correct in his assertion that the agreed upon clarifying instruction was never given, however, defendant fails to explain how he was prejudiced by the failure to explain to the jury why Boswell's name was not included in the instruction for the resisting or obstructing charge. Indeed, because the jury acquitted defendant of that charge, defendant cannot establish that he was prejudiced by the failure to give the agreed upon jury instruction. *Russell*, 297 Mich App at 716.

Lastly, defendant asserts in his statement of this issue that trial counsel was ineffective for conceding in his opening statement that defendant possessed heroin and cocaine at the time of his arrest. Because defendant fails to argue the merits of this claim in his brief, we could decline to review it. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Nonetheless, it is apparent that trial counsel's concession was part of a strategy of conceding guilt of the drug possession charges in light of the overwhelming evidence that defendant possessed the drugs, in order to build credibility for defendant's efforts to contest the remaining charges. See *People v*

-8-

*Walker*, 167 Mich App 377, 392; 422 NW2d 8 (1988), rev'd on other grounds *People v Mitchell*, 456 Mich 693 (1998) (citations omitted). Defendant has not overcome the presumption that counsel's partial concession was part of a reasonable trial strategy, and we will not second guess a reasonable trial strategy. "[T]he Sixth Amendment guarantees a range of reasonably competent advice and a reliable result. It does not guarantee infallible counsel." *Leblanc*, 465 Mich at 592. Accordingly, defendant is not entitled to relief on his claims of ineffective assistance of counsel.

## C. DIRECTED VERDICT OF ACQUITTAL

Defendant next argues that the prosecution failed to present sufficient evidence to prove the weapons charges beyond a reasonable doubt, and therefore, the trial court erred by denying his post-judgment motion for a directed verdict of acquittal. We review a trial court's decision on a motion for directed verdict of acquittal de novo and examine the evidence in a light most favorable to the prosecution to determine if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). Circumstantial evidence and reasonable inferences that can be drawn from that evidence can be sufficient to prove the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). It is for a jury to determine what inferences can be drawn from the evidence and the weight to be given those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The jury is also responsible for determining questions of credibility. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). A reviewing court should not interfere with the jury's role in determining credibility and the weight of evidence. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Instead, when reviewing the sufficiency of evidence, this Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of felon in possession of a firearm are that "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007) (citation omitted). Defendant contests only the possession element of both offenses.

It is well settled in Michigan that possession may be actual or constructive, and may be joint or exclusive. *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). Constructive possession exists when a defendant knows a gun's location and the gun was reasonably accessible to him. *People v Burgenmeyer*, 461 Mich 431, 437-438; 606 NW2d 645 (2000). Viewed in a light most favorable to the prosecution, the evidence showed that the gun and ammunition was discovered in plain view on the kitchen counter. LaCross testified that the front door of the home entered into the living room, and that the living room was open to the dining room and then to the kitchen. He explained that there were no closed doors that would have closed off either the kitchen or the dining room from the living room. Defendant was in the home caring for his children, one of whom was an infant sleeping on the sofa in the living room, and he had slept overnight in the house the previous night. Defendant's Bridge card was found in a kitchen drawer beneath where the gun was located. LaCross observed defendant move away from the front door and retreat into the house on two occasions as he was attempting to get

defendant to exit the home and provide his identification. A rational jury could conclude either that defendant actually possessed the gun and placed it on the kitchen counter when he retreated into the house, or that he had constructive possession of the firearm because he was aware of the visible gun on the kitchen counter and in close proximity to him. The fact that Morris, the children's mother, leased and resided in the house and claimed to have "owned" the gun did not preclude a finding of possession by defendant because (1) the credibility of her testimony was for the jury to resolve, and (2) possession may be joint or constructive, and possession is not the equivalent of ownership. *Burgenmeyer*, 461 Mich at 438. Moreover, Morris testified that she kept the gun on the top shelf of a cupboard in her kitchen when she was not sleeping, and kept it under the couch when she went to sleep, and she did not notice the gun on her kitchen counter, where the police found it, when she went to work. Viewed in a light most favorable to the prosecution, this testimony allowed the jury to conclude that it was defendant who placed the gun on the kitchen counter. Accordingly, the evidence was sufficient to allow a rational jury to find beyond a reasonable doubt that defendant possessed the gun. Thus, the trial court properly denied defendant's motion for a directed verdict of acquittal of the felon-in-possession and felony-firearm convictions.

Defendant also argues that his dual convictions for both felon in possession of a firearm and felony-firearm violate his double jeopardy protections. However, both the Michigan Supreme Court and this Court have previously held that convictions under these two statutes do not run afoul of double jeopardy protections. *People v Calloway*, 469 Mich 448, 452; 671 NW2d 733 (2003); *People v Dillard*, 246 Mich App 163, 167-168; 631 NW2d 755 (2001). We disagree with defendant's claim that *Calloway* was rendered invalid by our Supreme Court's subsequent decision in *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007), which adopted the "same elements" test articulated in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), for determining whether two statutory offenses violate double jeopardy protections. The Court in *Smith* stated that the "same elements" test is to be applied only when there is no clear indication of Legislative intent with respect to multiple punishments. *Smith*, 478 Mich at 316. Because *Calloway* was decided on the basis of clear legislative intent to allow punishment under both statutes, application of the "same elements" test is not necessary. Therefore, *Calloway*'s reasoning remains valid.

## IV. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that there was no evidence linking him to the gun found on the kitchen counter, and therefore, his weapons convictions are against the great weight of the evidence. We review "a denial of a motion for a new trial based on a great weight of the evidence argument under an abuse of discretion standard." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993). The test to determine whether a verdict is against the great weight of the evidence is whether "the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). "A verdict may be vacated only when it 'does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence.' " *DeLisle*, 202 Mich App at 661 (citation omitted). When evaluating a great weight of the evidence claim, a reviewing court may not act as a "thirteenth juror" or attempt to resolve credibility questions anew. *Lemmon*, 456 Mich at 636, 647.

For the same reasons set forth in part III, *supra*, the jury's verdict is not against the great weight of the evidence. The evidence did not clearly preponderate against a conclusion that defendant had actual or constructive possession of the gun. Accordingly, defendant is not entitled to relief on this issue.

## V. MOTION FOR RELIEF FROM JUDGMENT

Before appellate counsel was appointed, defendant filed a pro se motion for relief from judgment under MCR 6.502. The trial court considered the merits of the motion and denied it. The trial court subsequently learned that defendant's request for the appointment of appellate counsel was erroneously denied, and accordingly, appointed counsel to represent defendant for purposes of pursuing a direct appeal. Appellate counsel filed a claim of appeal in this Court and also a post-judgment motion in the trial court. In the post-judgment motion, counsel argued, in part, that defendant's earlier motion for relief from judgment was "inapplicable" because it sought relief from a judgment of conviction and sentence that was still subject to challenge on direct appeal. Appellate counsel asked the court to vacate its earlier order denying defendant's pro se motion for relief from judgment because MCR 6.502(G) limits defendants to filing only one motion under MCR 6.500 unless there is a retroactive change in the law or new evidence is discovered.

Defendant does not present any substantive argument challenging the trial court's denial of the pro se motion, but claims only that he is "prejudiced since he was forced to draft and file a motion for relief of judgment *in pro per* without the assistance of appellate counsel" and that "[t]he Due Process and Equal Protection Clauses require the appointment of counsel for defendants." Defendant ultimately was provided appointed counsel to pursue an appeal. The gist of defendant's argument is that his motion for relief from judgment, and the order denying his motion for relief from judgment, could at some time in the future prevent him from filing another motion for relief from judgment under MCR 6.500. This concern is hypothetical. This issue will be ripe for review only if defendant brings a motion for relief from judgment under MCR 6.500 and that motion is denied. Because defendant's concern is rooted in contingent future events, this issue is not ripe for appellate review and will not be addressed. *People v Conant*, 238 Mich App 134, 145; 605 NW2d 49 (1999).

Affirmed.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello