*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 14, 2023

Plaintiff-Appellant,

v

No. 364510
Wayne Circuit Court
LC No. 22-002739-01-FH

ROBERT LEVON TAYLOR,

Defendant-Appellee.

Before: LETICA, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's order dismissing the charge of possession with the intent to deliver 50 grams or more, but less than 450 grams, of cocaine, MCL 333.7401(2)(a)(*iii*). The trial court granted defendant's motion to suppress evidence of the cocaine because of an unreasonable search and seizure. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In late March 2022, an interdiction task squad was working at the Greyhound Bus Station in Detroit, Michigan. Michigan State troopers observed a vehicle with an out-of-state license plate parked outside the station. The male driver, defendant, left the vehicle, and a female assumed the driver's position. A search of the license plate through police databases disclosed there were two registered owners of the vehicle. The officers were able to confirm the photograph of one registered owner as defendant. It was learned that defendant had at least 16 outstanding arrest warrants[1] for misdemeanor offenses, including traffic violations, in Michigan. Additionally, defendant had been convicted of a drug offense in Pennsylvania. Defendant entered the bus

---

[1] At the preliminary examination, there was testimony that defendant had 16 outstanding arrest warrants for misdemeanor offenses, including traffic violations. For purposes of the evidentiary hearing, the number of outstanding arrest warrants was disclosed as 18. The disparity does not alter the officer's conclusion that defendant was subject to arrest for the outstanding warrants.

-1-

station. An officer approached defendant who was carrying a bag on his shoulder.[2] While talking with defendant, the officer noticed defendant's breathing was heavy, and defendant was perspiring despite the fact that it was cold. Defendant also kept moving his hands in and out of his pockets. Because of safety concerns, the officer asked for and was given consent to perform a pat-down search of defendant. When the officer asked to see the bus ticket, defendant produced a bus ticket on his cellular phone that misspelled his name.[3] In response to questions posed by the officer, defendant denied that he had been convicted of a drug offense.

The officer testified that he had reasonable suspicion to arrest defendant in light of the outstanding warrants,[4] the use of an alias on the bus ticket, defendant's interactions with the officer, including fidgeting and perspiring, and the lie addressing his criminal background. Despite the acknowledgment of reasonable suspicion, defendant was not formally arrested, but merely detained. Rather, the officer removed defendant's bag and placed it nearly ten feet away for a K-9 unit to perform a drug sniff.[5] Specifically, the bag was placed among other items, and the dog signaled for the scent of narcotics on defendant's bag.[6] After the dog's alert, the officer opened defendant's bag, opining there was probable cause to do so. Inside the bag were two Vaseline containers. The officer had encountered such containers in prior instances of concealment. While wearing a glove, the officer reached into the container past the petroleum jelly and found a hard anomaly. It was ultimately determined that 113 grams of crack cocaine was embedded in the petroleum jelly. Defendant was arrested for possession with intent to deliver.

Defendant moved to suppress the evidence of the cocaine, asserting that the police violated his Fourth Amendment rights, US Const, Am IV, when a search of his bag occurred without a warrant. Alternatively, defendant requested that the trial court schedule an evidentiary hearing regarding the motion. The prosecution countered that the circumstances gave the police reasonable suspicion that defendant's bag contained narcotics and a seizure of the luggage was permitted for additional investigation. It was further asserted that two exceptions to the warrant requirement were applicable, a search incident to a lawful arrest or inevitable discovery. Because the police were entitled to arrest defendant for the active warrants, the prosecution asserted that the bag would have been appropriately searched. Following the evidentiary hearing, the trial court granted the suppression motion. In rendering its decision, the trial court determined that the seizure of the bag

---

[2] The bag was initially described as a "duffle bag" but was also referred to as a "back pack" in the trial court.

[3] Defendant showed the officer his mobile bus ticket. Defendant's name on the ticket was "Tyler" instead of "Taylor." Additionally, defendant was perspiring even though the officer testified it was 20 degrees Fahrenheit in the area they were standing.

[4] The defense posited that the detention center would not have accepted an arrest for misdemeanor traffic offenses. But, there was no record evidence to support this assertion.

[5] The K-9 handler indicated that the distance between the dog and the public was for safety purposes.

[6] We do not delineate the dog's training, process, and expertise because it is not challenged in this appeal. It was noted that the dog was trained to detect cocaine, the drug ultimately found in the containers in defendant's bag.

was constitutionally permissible in light of the facts of the case demonstrating reasonable suspicion. The trial court noted that defendant had criminal drug convictions, "some active warrants," used a fake name, and denied having a prior criminal record. The trial court determined these factors gave the officer reasonable suspicion to investigate by stopping defendant, questioning him, and having the dog sniff the bag. Thus, the trial court found that the "seizure was [c]onstitutional." But, the trial court further found that it was not constitutionally permissible to search defendant's bag without a warrant. Specifically, the trial court determined that when the dog sniffed the bag and suggested that drugs were present, the officer had probable cause to arrest defendant. Thus, on the record, there was probable cause to believe that a crime was committed and that defendant was actively involved in the crime. Addressing the search of defendant's bag, the trial court stated:

> Uhm, however, uh, with respect to whether [defendant's] bag could be searched, incident to that arrest, that is to say, without a warrant, uhm, the record establishes that [defendant] was separated from his bag, uh, by at least ten feet.

> The bag was not in his possession.

> Similarly, he was in the custody of, or placed with, at a minimum, several government agents.

> Uh, the back pack, based upon the record, was clearly not in control - - was not in [defendant's] control.

> And [caselaw] tells us that - - to - - that a search incident to an arrest can only be made, in a legal way, if that bag would be in [defendant's] possession or control.

> The, the [caselaw] talks about, that, that would be a permissible search, because, uhm, if the, if the contraband was in the possession and control, uhm, there could be a gun present.

> Uh, there could be a risk, there could be a security problem, uh, to the Officers.

> There could be a, a concern that the defendant might destroy the evidence.

> However, that was not present in this case.

> [Defendant] was removed from the bag, uh, by several feet, and thus, it was not in his possession and control.

> As such, uhm, there would be no . . . exceptions to the rule, which would require a warrant, for a search of the bag.

> Uh, the People have suggested, uh, that the search at issue could have been, though marked by the Police Agency's inappropriate conduct, it still could be

considered inevitable that the discovery of the contraband would have been made, at some point in time.

However, there is substantial case[]law that inevitable discovery of contraband, uh, that certain facts can be established to make that a permissible search.

However, none of those facts are present in the instance [sic] action.

Uhm, to suggest that there, that there would have been inevitable discovery of the contraband, uh, would essentially, based on this record, undercut the Constitutional protection that [defendant] was entitled to.

Uhm, the facts of this case, or the record establishes that, to permit, uh, to determine that this was, that this - - that the obtaining of the contraband was permissible under the inevitable discovery rule, would, indeed, undercut the protections of the Fourth Amendment for [defendant].

Uhm, based upon the record, uh, to permit that to be the case would provide an incentive for the Police to conduct, uhm, illegal searches, and to look the other way as to the Police misconduct.

Uh, it would, in this particular case, provide an incentive for the Police to engage in misconduct, and circumstances that likely occur commonly in bus stations, uh, and airports, and would significantly weaken Fourth Amendment protections.

Uh, based upon the record, the Court does believe that the exclusionary rule requires the suppression of the drug contraband, which was obtained in this case.

After the oral ruling to suppress the evidence, defense counsel moved to dismiss, citing the lack of admissible contraband. The prosecutor noted that, without the contraband, the case could not move forward. The trial court granted the defense motion to dismiss, and the prosecution appeals.

## II. INEVITABLE DISCOVERY

The prosecution contends that the trial court erred in suppressing evidence because the narcotics would have inevitably been discovered, thereby obviating application of the exclusionary rule and the narcotics suppression.[7] We agree.

---

[7] Defendant contends that the issue raised by the prosecution is not preserved for appellate review because it did not correlate the inevitable discovery rule to an inventory search. Generally, to preserve an issue for appellate review, it must be raised, addressed, and decided in the trial court. *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). In criminal cases, appellate courts may not grant relief for unpreserved errors unless the plain error standard is

The appellate court reviews a trial court's findings at a suppression hearing for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference[.]" *Id*. Accordingly, the appellate court reviews "de novo the trial court's ultimate ruling on the motion to suppress." *Id*. "Application of the exclusionary rule to a Fourth Amendment violation is a question of law that is reviewed de novo." *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no warrants shall issue but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. Similarly, the Michigan Constitution protects "the person, houses, papers and possessions of every person" and prohibits "unreasonable searches and seizures" absent a warrant based upon probable cause. Const 1963, art 1, § 1; *People v Kazmierczak*, 461Mich 411, 417; 605 NW2d 667 (2000). Reasonableness is the touchstone of the Fourth Amendment analysis, and a search warrant is not always necessary before searching or seizing an individual's personal effects. *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020) (citations omitted). But, it is strongly preferred that searches be conducted in accordance with a warrant. *Id*. Therefore, searches and seizures conducted without a warrant are presumptively unreasonable, and therefore, unconstitutional. *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). An individual may challenge an alleged Fourth Amendment violation if he can demonstrate, under the totality of the circumstances, a legitimate expectation of privacy in the item searched and the expectation of privacy was one that society is prepared to recognize as reasonable. *People v Mead*, 503 Mich 205, 214; 931 NW2d 557 (2019). Additionally, the reasonableness of a search or seizure is contingent upon whether "the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *People v Hyde*, 285 Mich App 428, 437; 775 NW2d 833 (2009) (quotation marks and citations omitted). Warrantless arrests that occur in public and premised on probable cause do not violate the Fourth Amendment. *People v Hammerlund*, 504 Mich 442, 452; 939 NW2d 129 (2019). A police officer has probable cause to

---

satisfied. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In the present case, defendant moved for suppression of evidence, alleging a Fourth Amendment violation. In response, the prosecution alleged that two warrant exceptions permitted the search of defendant's bag, a search incident to a lawful arrest, and inevitable discovery as correlated to a lawful search incident to an arrest. However, the response brief also generally referenced the inevitable discovery rule as addressing "when evidence would have been revealed anyway of what turns out to be constitutionally inappropriate police conduct, that evidence is still admissible," and citing *People v Stevens*, 460 Mich 626, 637; 597 NW2d 53 (1999). More importantly, when the trial court ruled that inevitable discovery would "undercut" the constitutional protections, it declined to specify the inevitable discovery circumstance at issue or cite any applicable caselaw. In light of the arguments raised in the prosecutor's response brief and the general ruling by the trial court, we do not agree that this issue was unpreserved for appellate review.

conduct a search when the available facts would justify a reasonably cautious person in the belief that contraband or evidence of a crime is present. *Florida v Harris*, 568 US 237, 243; 133 S Ct 1050; 185 L Ed 2d 61 (2013); see also *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). "A positive indication by a properly trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v Diaz*, 25 F 3d 392, 393-394 (CA 6, 1994).

There are numerous exceptions to the general rule that warrantless searches are unreasonable. *Barbarich*, 291 Mich App at 472. These exceptions require a balancing of the governmental interest in justifying an intrusion "against an individual's right to be free of arbitrary police interference." *Id*. (citations omitted).[8]

When evidence is obtained in violation of the Fourth Amendment, it is generally inadmissible as substantive evidence in a criminal matter. *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). This principle, generally known as the exclusionary rule, affords individuals a basic protection against arbitrary police conduct. *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993). The "exclusionary rule does not apply when the costs of exclusion outweigh its deterrent benefits." *Utah v Strieff*, 579 US 232, 235; 136 S Ct 2056; 195 L Ed 2d 400 (2016). Suppression of evidence should be a last resort, not a first impulse. *Id*. at 237-238.

One exception to the exclusionary rule is the inevitable discovery doctrine. "[W]hen information is discovered after the police violate the Fourth Amendment, the evidence should not be suppressed if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *Hyde*, 285 Mich App at 439 (quotations, punctuation, and citation omitted).

> The inevitable discovery exception generally permits admission of tainted evidence when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been revealed in the absence of police misconduct. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." If the evidence would have been inevitably obtained, then there is no rational basis for excluding the evidence from the jury. In fact, suppression of the evidence would undermine the adversary system by putting the

---

[8] The Fourth Amendment does not prohibit law enforcement officers from temporarily detaining personal luggage for exposure to a drug-sniffing dog on the basis of reasonable suspicion that the luggage contains narcotics. *United States v Place*, 452 US 696, 697-698, 706-707; 103 S Ct 2637; 77 L Ed 2d 110 (1983). There is no prohibition because of the difficulty enforcing the detection of narcotics trafficking and the minimal intrusion from a properly limited detention. *Id*. at 698. But, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v United States*, 575 US 348, 351; 135 S Ct 1609; 191 L Ed 2d 492 (2015). Here, it is the actions of the police following the dog sniff that are challenged as a Fourth Amendment violation.

-6-

prosecution in a worse position than it would have been in had there been no police misconduct. [*People v Stevens*, 460 Mich 626, 637; 597 NW2d 53 (1999) (citations omitted).]

The inevitable discovery exception arises because society's interest in deterring police conduct and the public's interest in having juries receive all probative evidence of a crime must be properly balanced by placing the police in the same, not a worse, position than they would have been in if no police error or misconduct occurred. *Hyde*, 285 Mich App at 439. Under the inevitable discovery doctrine, evidence obtained in violation of the Fourth Amendment is admitted if it is demonstrated, by a preponderance of the evidence, that the items found would have ultimately been obtained in a constitutionally accepted manner. *Id*. at 439-440.

Three concerns arise in the inevitable discovery analysis: (1) whether the legal means are truly independent, (2) whether both the use of the legal means and the discovery by that means are truly inevitable, and (3) whether the application of the inevitable discovery doctrine provides an incentive for police misconduct or significantly weakens Fourth Amendment protections. [*Id*. at 440.]

When a criminal defendant admitted ownership of a sizable quantity of drugs, the police clearly had probable cause to arrest the defendant. *Rawlings v Kentucky*, 448 US 98, 110-111; 100 S Ct 2556; 65 L Ed 2d 633 (1980). "Where the formal arrest followed quickly on the heels of the challenged search of [the defendant's] person, [it is not] particularly important that the search preceded the arrest rather than vice versa." *Id*. at 111.

In the present case, the officer had a truly independent means to arrest defendant for the outstanding warrants. Alternatively, the officer acquired probable cause to arrest premised on the positive indication following the dog sniff of defendant's bag. *Hyde*, 285 Mich App at 439-440. These legal means, either the arrest for the outstanding warrants or the arrest following the positive indication on defendant's bag, would have led to the removal of defendant's property. *Id*. The positive indication for narcotics by the dog sniff would have led to the investigation of the containers in defendant's bag and an itemization of the drugs recovered. See *People v Alexander*, 112 Mich App 357, 360-361; 315 NW2d 543 (1981). And, the application of the inevitable discovery doctrine in this case does not provide an incentive for police misconduct. Here, the police had grounds to arrest defendant on the outstanding warrants. The failure to immediately arrest defendant before continuing the investigation did not alter the legal grounds to arrest. See *Rawlings*, 448 US at 111. Indeed, the testifying officer opined that legal grounds for the investigation and seizure existed, citing to defendant's outstanding warrants, his fidgeting and perspiring when answering questions, his lie regarding his criminal history, the alias used to acquire the bus ticket, and the vehicle's registration in Pennsylvania.

For purposes of completeness, we also that note, in addition to the inevitable discovery rule, two other exceptions to the suppression of evidence for an illegal search or seizure analyze the causal relationship between the unconstitutional act and the discovery of evidence. *Strieff*, 579 US at 238. The independent source doctrine permits the admission of evidence obtained in an unlawful search if the police independently acquire the evidence from a separate, independent source. *Id*. Additionally, the attenuation doctrine allows evidence to be admitted "when the connection between unconstitutional police conduct and the evidence is remote or has been

interrupted by some intervening circumstance such that any protected constitutional guarantee that was violated would not be served by the suppression of evidence. *Id*.

The *Strieff* decision provides a similar factual scenario. In *Strieff*, the police received an anonymous tip that narcotics activity was occurring at a particular residence. Over the course of a week, Officer Douglas Fackrell investigated the tip by conducting intermittent surveillance of the home. Officer Fackrell observed visitors to the home leave within a few minutes of their arrival, and the frequency of the visits caused him to suspect that the home's occupants were dealing drugs. One visitor, Edward Strieff, exited the home and walked to a nearby convenience store. In the parking lot, Officer Fackrell identified himself, detained Strieff, and inquired about Strieff's visit to the residence. In response to Officer Fackrell's request, Strieff produced his identification card. A police dispatcher advised Officer Fackrell that Strieff had an outstanding warrant for a traffic violation. Officer Fackrell searched Strieff incident to the arrest, and the search incident to the arrest uncovered methamphetamine and drug paraphernalia. *Strieff*, 579 US at 235-236.

After being charged for unlawful drug possession, Strieff moved to suppress the evidence, claiming that it was inadmissible when derived from an unlawful investigatory stop. At the hearing, the prosecution conceded that Officer Fackrell lacked reasonable suspicion for the stop, but submitted that suppression of evidence was not warranted because the existence of a valid arrest warrant attenuated the connection between the unlawful stop and the discovery of the contraband. The United States Supreme Court determined that suppression of the evidence was not required. *Id*. at 236-237.

> The *Strieff* Court examined whether "the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of drug-related evidence on Strieff's person." Examination of three-factors was necessary: First, we look to the "temporal proximity" between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider "the presence of intervening circumstances." Third, and "particularly" significant, we examine "the purpose and flagrancy of the official misconduct." In evaluating these factors, we assume without deciding (because the State conceded the point) that Officer Fackrell lacked reasonable suspicion to initially stop Strieff. And, because we ultimately conclude that the warrant breaks the causal chain, we also have no need to decide whether the warrant's existence alone would make the initial stop constitutional even if Officer Fackrell was unaware of its existence. [*Id*. at 239 (citations omitted).]

The *Strieff* Court applied the facts to the three-factor test. It determined that the first factor, temporal proximity, did not favor attenuation because a "substantial time" had not elapsed between the unlawful act and the discovery of the narcotics evidence. However, the second factor, intervening circumstances, strongly favored the state because "the existence of a valid warrant favors finding that the connection between unlawful conduct and the discovery of evidence is sufficiently attenuated to dissipate the taint." Specifically, the arrest warrant for Strieff predated Officer Fackrell's investigation, it was valid, and it had no connection to the stop. And once

Officer Fackrell discovered the violation he was obligated to arrest Strieff.[9] *Id*. at 240 (citations omitted).

Addressing the third factor, it was determined that the purpose of the exclusionary rule, to deter police misconduct, favored the state. Specifically, exclusion of evidence was warranted to deter police misconduct when it was purposeful or flagrant. But, the *Strieff* Court concluded that Officer Fackrell was, at most, negligent, and made two good-faith mistakes when stopping Strieff in the parking lot. He failed to observe the period of time that Strieff spent in the suspected drug house, to ascertain whether he was a short-term visitor, and failed to obtain a consensual discussion. These errors in judgment were not deemed to rise to the level of purposeful or flagrant violations of Strieff's Fourth Amendment rights. *Id*. at 241-242.

Similarly, applying the *Strieff* decision to the present case, we conclude that the trial court erred in suppressing the narcotics evidence. The exclusionary rule should not be applied when the costs of exclusion outweigh deterrent benefits, and suppression of evidence must be a last resort, not first impulse. *Id*. at 235, 237-238. The temporal proximity did not favor the prosecution as there was a short time frame between the seizure of the bag and the discovery of the crack cocaine. But, the presence of intervening circumstances strongly favored the prosecution. Specifically, the police observed defendant exit a vehicle at the bus station. The vehicle was registered to two different individuals, one of them being defendant. Defendant had at least 16 outstanding arrest warrants for misdemeanor offenses. He was previously convicted of a drug offense in Pennsylvania. When an officer questioned defendant regarding his travel plans, he began to fidget and sweat despite the temperature being only 20 degrees Fahrenheit. Defendant lied to the officer about his criminal record. At that time, defendant could have been arrested for the outstanding warrants. The warrants predated defendant's contact with the police, there was no indication that they were invalid, and they were not connected with the stop at the bus station. *Id*. at 240-241.

Finally, there was no indication that the officer that contacted defendant purposefully and flagrantly engaged in official misconduct. Rather, the officer delineated the facts underlying the determination to make contact with defendant, the discovery of the multiple vehicle registrants, the knowledge of the outstanding warrants, the database disclosing defendant's criminal record for a drug offense, and his demeanor during the stop at the bus station. The officer opined that upon learning of the outstanding arrest warrants, he could have arrested defendant, but exercised his discretion at that time. Thus, at most, the officer's actions constituted negligence. Accordingly, the trial court erred in granting defendant's motion to suppress.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

---

[9] "A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *United States v Leon*, 468 US 897, 920, n 21; 104 S Ct 3405; 82 L Ed 2d 677 (1984) (internal quotation marks omitted).